(December 30, 1913.)

## L. C. WILSON, Receiver, Appellant, v. BAKER CLOTHING CO., a Corporation, Respondent.

[137 Pac. 896.]

COMPLAINT — DEMURRER — INSOLVENT   CORPORATION — PREFERENCES — LEGAL AND ILLEGAL—STATUTORY PROHIBITION.

1. *Held,* that the court did not err in sustaining the demurrer to the complaint and entering a judgment of dismissal.

2. A depositor who actually knows that a bank is insolvent and does nothing but draw his check and present it for payment, and it is paid in the usual course of business, cannot be required to refund the amount so withdrawn.

3. A corporation, although insolvent, holds its assets just as a natural person holds his property, with the same power to dispose of it to secure or pay its debts, and neither a private person nor a corporation can fraudulently dispose of his or its property to the injury or damage of his or its creditors.

4. The property of a corporation, in one sense, is a trust fund for the payment of its debts, but this only means that such property cannot be distributed among its stockholders or applied to any purpose foreign to the legitimate business of the corporation until its debts are paid.

5. An insolvent corporation is not prohibited by the statutes of this state from preferring certain creditors over others in the due course of business where such preference is not collusively or fraudulently made.

6. Merely alleging that an act was collusive and fraudulent is not sufficient. The facts constituting the collusion or fraud must be alleged.

7. Preferences that are made by a bank through conspiracy or fraud with the creditor may be set aside on proper application.

APPEAL from the District Court of the First Judicial District, in and for Shoshone County. Hon. W. W. Woods, Judge.

Action by a receiver of an insolvent bank to recover from a depositor money which such depositor checked out of the bank. Demurrer to the complaint sustained and judgment of dismissal entered. *Affirmed.*

Jas. E. Babb and J. H. Wourms, for Appellant.

Cases involving the liability of a depositor of a bank who, with knowledge of its insolvency, has withdrawn his money therefrom are not numerous, and by far the greater number have been determined under particular statutes. (*McGregor v. Battle,* 128 Ga. 577, 58 S. E. 28, 13 L. R. A., N. S., 185; *Livingstain v. Columbian Banking & Trust Co.,* 81 S. C. 244, 62 S. E. 249; *Burrell v. Bennett,* 20 Wash. 644, 56 Pac. 375; *Cook v. Moody,* 18 Wash. 114, 63 Am. St. 872, 50 Pac. 1020; *Conover v. Hull,* 10 Wash. 673, 45 Am. St. 810, 39 Pac. 166; *James Clark Co. v. Colton,* 91 Md. 195, 46 Atl. 386, 49 L. R. A. 698; *McDonald v. Chemical Nat. Bank,* 174 U. S. 610, 19 Sup. Ct. 787, 43 L. ed. 1106.)

Not only was the payment of defendant's check under the circumstances alleged in the complaint a violation of every principle of fair dealing and justice to the other depositors of said bank, who had not the knowledge which defendant's president had of its insolvency, but such payment was in direct violation of sec. 3169, Rev. Codes.

The banking business, being of a public nature, must be conducted without discrimination among the patrons thereof— the depositors. (Joyce on Franchises, p. 1041, sec. 63.)

This principle is at the bottom of sec. 65 of the Idaho banking laws (chap. 124, p. 386, Sess. Laws 1911), declaring a

prior lien in favor of all depositors, and the section prohibiting receipt of deposits when insolvent, and secs. 73 and 74, requiring a bank when insolvent to be wound up.

These provisions, all taken together, prohibit the transaction of business by an insolvent banking corporation.   (5 Cyc. 562–564; 2 Cook on Corp., 6th ed., p. 2120.)

The principles upon which preferences have been allowed heretofore, together with the Idaho statutes with reference to banks, clearly declare illegality of a preference by an insolvent bank.   (*Hollins v. Brierfield Coal & Iron Co.,* 150 U. S. 371, 14 Sup. Ct. 127, 37 L. ed. 1113.)

Our statute provides that all depositors have an equal lien upon the assets.   (*Blackman v. Pettengill, ante,* p. 307, 137 Pac. 182.)

J. E. Gyde, for Respondent.

"The mere allegation of fraud in general terms without stating the facts upon which the charge rests is not sufficient, and where it is claimed that a contract is procured by fraudulent representations they must be set up."   (Smith on the Law of Fraud, sec. 251; *Kemmerer v. Pollard,* 15 Ida. 34, 96 Pac. 206; *Oroville & V. R. Co. v. Suprs. Plumas County,* 37 Cal. 354; *Heller v. Dyerville Mfg. Co.,* 116 Cal. 127, 47 Pac. 1016; Bliss on Pleading, sec. 211.)

"We are not prepared to hold that one who actually knows that a bank is insolvent, but does nothing except to draw his check and present it and receive payment over the counter in the usual course of business, would be required to refund the amount so withdrawn, less his *pro rata* share upon a final winding up of the affairs of the bank."   (*McGregor v. Battle,* 128 Ga. 577, 58 S. E. 28, 13 L. R. A., N. S., 185.)

Idaho has no statute prohibiting an insolvent natural person or an insolvent corporation from making a preference of one or more of its creditors at any time prior to the insolvent corporation going into the hands of a receiver or making an assignment for the benefit of creditors.   (3 Clark & Marshall on Corporations, 2365, sec. 780, and cases cited; Tiffany on

Banks and Banking, 346; *Merced Bank v. Ivett,* 127 Cal. 134, 59 Pac. 393; *O'Brien v. East River Bridge Co.,* 161 N. Y. 539, 56 N. E. 74, 48 L. R. A. 122.)

"Wherever a preference is recognized, a banking corporation can prefer creditors like an individual." (2 Bolles, Modern Law of Banking, p. 803; *Grand De Tour Plow Co. v. Rude Bros. Mfg. Co.,* 60 Kan. 145, 55 Pac. 848.)

In the absence of statutory prohibition, an insolvent corporation may make a general assignment for the benefit of creditors, with preferences. (*Ames & Frost Co. v. Heslet,* 19 Mont. 188, 61 Am. St. 496, 47 Pac. 805; *Warfield v. Marshall Canning Co.,* 72 Iowa, 666, 2 Am. St. 263, 34 N. W. 467; *Blair v. Illinois Steel Co.,* 159 Ill. 350, 42 N. E. 895, 31 L. R. A. 269; *West v. Hanson Produce Co.,* 6 Colo. App. 467, 41 Pac. 829; *National Bank v. George M. Scott & Co.,* 18 Utah, 400, 55 Pac. 374; *Colorado Fuel & Iron Co. v. Western Hardware Co.,* 16 Utah, 4, 50 Pac. 628; *Levering v. Bimel,* 146 Ind. 545, 45 N. E. 775; *Slack v. Northwestern Nat. Bank,* 103 Wis. 57, 74 Am. St. 841, 79 N. W. 51; *Bank of Montreal v. Potts Salt & Lumber Co.,* 90 Mich. 345, 51 N. W. 512.)

SULLIVAN, J.—This is an appeal from a judgment of dismissal entered on an order sustaining the respondent's demurrer to the appellant's amended complaint. The action was brought by the receiver of the State Bank of Commerce of Wallace against the defendant corporation, the Baker Clothing Company, to recover the sum of $2,000, which the amended complaint alleges was fraudulently withdrawn from said bank by the respondent in contemplation of said bank's insolvency, and for the purpose and with the intent of securing to the defendant corporation a preference over other creditors and depositors of said bank.

The allegations of the amended complaint set forth the organization of said State Bank and allege that it was transacting a general banking business at Wallace, Idaho, and that it continued to conduct a banking business for a number of years and down to May 12, 1911, when it availed itself of the provisions of sec. 70 of chap. 124 of the Session Laws of 1911,

by placing its affairs in the hands of the state bank commissioner.

It is alleged that on May 12, 1911, and for a long time prior thereto, and particularly on the 10th and 11th days of May, 1911, said bank was hopelessly insolvent and that it had not opened its doors for the transaction of business since May 12, 1911.    Then is alleged the appointment of a receiver and that the liabilities of said bank on May 12th amounted approximately to $450,000, while its assets did not exceed $175,-000, and that the assets are not sufficient to pay the depositors in full; that on May 11th the respondent corporation was a depositor in said bank and had a credit balance in said bank; that on said 11th day of May, when said bank was insolvent and during banking hours, one Baker, the president of the respondent corporation, went to the bank and presented his check on the defendant's account for $2,000, but was advised by the cashier of said bank that the cash account was so low and the bank's financial condition so unsound that it would be impossible to cash such check, and refused to cash the same; that thereupon said Baker, for and on behalf of the respondent corporation, requested the cashier to lay aside the sum of $2,000, with which to subsequently cash said check if the condition of the bank should improve, and that the cashier then placed in a separate drawer in the vault of said bank the sum of $2,000, advising one of the bookkeepers who occupied the banking-room as sleeping quarters that he had set aside said $2,000, for the accommodation of Baker, but instructed the bookkeeper not to deliver the money to Baker except on his (the cashier's) instructions; that after business hours on May 11th, said Baker, accompanied by the president of said bank, went to the banking-house at about midnight and they, acting in collusion, gained admittance to said banking-room and attempted by threats and coercion to induce said bookkeeper to open the vault of said bank and give said Baker the $2,000 which had been set aside by the cashier; that this effort failed, and that said Baker with the president of the bank returned about 2 o'clock of the same night and again attempted by threats and coercion to induce said bookkeeper

to pay over said $2,000 to Baker for the respondent Clothing Company, which the bookkeeper refused to do. It is also alleged that said two efforts were made to procure said $2,000 to be paid over to the respondent whereby it would receive one hundred cents on the dollar of its deposit, whereas the other depositors would receive only a ratable distribution of the bank's assets; that Baker must have known and did know at the time of said efforts to procure the payment of said $2,000 that said bank was hopelessly insolvent; that on the morning of the 12th day of May, 1911, said bank opened its doors for business at 9 o'clock A. M., and was forced to close its doors at 10 o'clock A. M., and that during the time said bank was open on that morning said $2,000 was paid over to Baker upon said check; that the respondent knew that said bank was insolvent and that it intended by procuring the payment of said $2,000 to obtain a preference over other depositors of said bank and thus hinder, delay and defraud the creditors of said bank.

A demurrer was filed to said amended complaint, based on the ground that the complaint did not state facts sufficient to constitute a cause of action, and that it was uncertain in the particulars specified in the demurrer.

Only one error is assigned and that is that the court erred in sustaining the demurrer to the amended complaint.

It is first contended that as the respondent corporation had full knowledge of the insolvency of said bank, it was liable to the receiver for the return of said $2,000 that it checked out of said bank on May 12, 1911. Counsel cites in support of that contention the case of *McGregor v. Battle,* 128 Ga. 577, 58 S. E. 28, 13 L. R. A., N. S., 185. It appears from the facts stated in that case that the defendant Battle was a brother in law of the president of the bank and that the bank's funds were low, and for the purpose of bolstering up the credit of the bank, its president induced said Battle to put up $7,000, ostensibly for the purpose of purchasing seventy shares of the stock of said bank; that some of the depositors had become suspicious of the solvency of the bank and made inquiries in regard thereto with a view to withdrawing their deposits,

when the defendant Battle, in collusion with the president of the bank, made a public display of said $7,000 for the purpose of deceiving the depositors, and being so deceived by the display of said money, did not check their money out of the bank.

That case is not parallel to the case at bar, but counsel relies on the statement in the opinion in that case which is as follows: "If a bank is insolvent, but is still conducting its business and pays the check of a depositor in the usual course of business, and the depositor has no notice of the insolvency, the payment is good, and the depositor is protected notwithstanding the bank is actually insolvent." That decision is based upon the rule or proposition that a depositor who has knowledge of the insolvency of a bank in which he has money deposited cannot legally withdraw his money from the bank, but that one who has no such knowledge may legally withdraw his money from the bank. In the Georgia case the court cites sec. 1979 of the Civil Code of Georgia and sec. 208 of the Penal Code of that state, and says: "The purpose of this provision is to prevent the bank from preferring one of its creditors when the fact of insolvency is known to the creditor. As construed by that court, said statute prohibits the making of preferences by insolvent banks. The defendant Battle in that case was a pretended stockholder in the insolvent bank and fraudulently assisted the bank in making a display of said $7,000 (to recover which sum said action was brought), for the purpose of inducing depositors and creditors of the bank not to withdraw their deposits. This transaction was certainly a shady one, and under the facts of that case, even without the statute, we think the court would have been fully justified in deciding the case against Battle."

As appears from the allegations of the complaint in the case at bar, on May 11th said bank was regularly engaged in banking business, and the respondent had money on deposit in the bank and drew a check upon such deposit for the sum of $2,000. The bank had sufficient money on hand to pay it but the cashier refused to pay the same when the check·

was presented, but laid that amount aside for the respondent company, and the cashier paid it over to the respondent company on the morning of May 12th, after the bank had opened for business.    There are no allegations in the complaint showing or tending to show that the officers of the respondent company used any undue influence upon the cashier or made any fraudulent representations that induced him to pay said money on said check.

In the Georgia case the court uses the following language: "A run on a bank is always produced by those who think they have reason to suspect that the bank is in a failing condition; and we are not prepared to hold if a bank is still in operation, open during the usual hours of business, paying its checks in the order in which they are presented, according to the custom of bankers, that a depositor who merely had reason to suspect the solvency of the bank, this being the motive for his drawing a check, would be required to repay to the bank the amount so withdrawn. . . . . Neither are we prepared to hold that one who actually knows that a bank is insolvent, but does nothing except to draw his check and present it and receive payment over the counter in the usual course of business, would be required to refund the amount so withdrawn, less his *pro rata* share, upon a final winding up of the affairs of the bank."

As we understand that quotation from the opinion of the supreme court of Georgia, it does not support the contention of counsel for appellant to the effect that a depositor who has knowledge of the insolvency of a bank may not legally check out his deposit.    No statute of this state has been called to our attention that prohibits a depositor from drawing his check on his deposit in a bank and receiving payment of such check in the due course of business, even though he knows that such bank is insolvent at the time he presents his check. If the legislature should conclude that all payments made by a bank to its depositors after it becomes insolvent may be recovered by the receiver of such bank, it devolves upon the legislature to enact such a law and not on the courts to establish such a rule by decision.

It has been held in some jurisdictions that when a corporation becomes insolvent or ceases business or determines to cease business, although no proceeding may have been instituted for winding up its affairs, its assets are so far a trust fund for the benefit of all its creditors ratably that it cannot, as a natural person may, prefer one or more of its creditors to the exclusion of others, by a voluntary conveyance, mortgage, pledge, assignment, confession of judgment or otherwise, and that if it attempts to do so, a court of equity will set aside such preference and distribute the assets *pro rata* among all the creditors.

It is stated in 3 Clark & Marshall on Corporations, sec. 780, that this view, however, is contrary to the overwhelming weight of authority, and the author states as follows:

"The late cases show that the assets of a corporation are not in any proper sense a trust fund for creditors, so long as no proceedings for a winding up have been instituted, even though it may be hopelessly insolvent, except to such an extent that they cannot be distributed among or withdrawn by stockholders to the prejudice of creditors; but, on the contrary, a corporation, although insolvent, holds its assets just as a natural person holds his property, with the same power to dispose of it to secure or pay debts. And in most jurisdictions, therefore, it is held that a corporation, although it may be hopelessly insolvent, and although it may be about to go into the hands of a receiver, or to assign for the benefit of creditors, or may be in the act of making an assignment, has the same power as a natural person to prefer one or more creditors to the exclusion of others, unless it is prevented from doing so by some express statutory provision."

Said section is accompanied by a foot-note where the author has cited many decisions from both federal and state courts as supporting the doctrine laid down in that section. (See, also, 7 Am. & Eng. Ency. of Law, 2d ed., p. 742, where many cases are cited in support of the doctrine there laid down.) The author states at p. 743 that by a decided weight of authority an insolvent corporation cannot prefer debts due to

its officers, even where it is held that it has the right to prefer other creditors.

It is undoubtedly true that the property of a corporation is in one sense a trust fund for the payment of its debts, but this means that the property of a corporation cannot be distributed among its stockholders or applied to any purpose foreign to the legitimate business of the corporation until its debts are paid.

In *Hills v. Stockwell & Darragh Furniture Co.,* 23 Fed. 432, a mortgage had been given by an insolvent corporation to secure certain creditors and the court said: "It does not affect the question if the company could never pay its debts in full; for the legal right of an insolvent debtor to secure one or more creditors in preference to others, where no fraud is intended, is settled in Michigan by many decisions." That case is quoted from with approval by the supreme court of Michigan in *Bank of Montreal v. Potts Salt & Lumber Co.,* 90 Mich. 345, 51 N. W. 512.

Where the transfer by the insolvent is made fraudulently and with a view to hindering and delaying creditors, a court of equity upon proper application will set aside such conveyance and hold such property as a trust fund for *pro rata* distribution among all of the creditors. Insolvent corporations are not prohibited by statute in this state from preferring certain creditors over others in the due course of business, where such preferences are not collusively or fraudulently made.

It is alleged in the complaint of the case at bar that the taking of said $2,000 from said bank was with the intent on the part of the bank and its officers and of the said defendant to hinder, delay and defraud the creditors of said bank, but it is not alleged how this would hinder, delay and defraud creditors any more than would the payment of other checks drawn on said bank in the due course of business. It is alleged that the president of the respondent company and the president of the bank went to the bank at midnight and endeavored to have the bookkeeper pay said $2,000 check but that he refused to do so, and thereafter when the bank opened

for business on the morning of May 12, 1911, said check was presented and paid by the cashier who had declined to pay it the day before but who had put aside $2,000 for the purpose of paying said check. The facts alleged are not sufficient to show that there was collusion or fraud in the payment of said check. The law is well settled that a party who seeks to recover on the ground of collusion and fraud must plead the particular representations or facts constituting such collusion or fraud. Merely alleging that an act was collusive and fraudulent is not sufficient. (*Kemmerer v. Pollard,* 15 Ida. 34, 96 Pac. 206.)

Under the law applicable to this case, we are satisfied that the court did not err in sustaining said demurrer.

We are not inclined to lay down the rule in this state that a depositor who has suspicions or knows that a bank in which he has a deposit is insolvent may not legally draw out such deposit, and to hold that one who has no knowledge of the insolvency of the bank may draw out his deposit and retain it, while the one who has knowledge must return the money he has drawn out to the receiver to be distributed *pro rata* among the creditors of the bank. We are not in accord with the views of counsel for appellant who would draw a dividing line between the depositors who have knowledge of the insolvency of a bank and those who have not such knowledge.

Preferences that are made by a bank through conspiracy and fraud with a creditor may be set aside. If the legislature desires to do so, it has the authority to enact a law specifically declaring what are preferences in such cases and what are not.

The action of the court in sustaining said demurrer and entering a judgment of dismissal must therefore be sustained, and it is so ordered, with costs in favor of respondent.

Ailshie, C. J., and Stewart, J., concur.