ASSOCIATED FRUIT COMPANY, a Corporation, Respondent, v. IDAHO–OREGON FRUIT GROWERS' ASSOCIATION, a Corporation, Defendant, and FRUIT-LAND FRUIT ASSOCIATION, GEM FRUIT UNION, H. C. PRIOR, Trustee, E. T. HYDE, Trustee, and PAYETTE FRUIT DISTRIBUTORS, Garnishees and Appellants.

[256 Pac. 99.]

AGRICULTURE — CO-OPERATIVE NONPROFIT ASSOCIATIONS — DISTRIBUTION OF PROFITS—LIQUIDATION OF CLAIMS — FRAUDULENT TRANSFER OF STOCK—GARNISHMENT PROCEEDINGS.

1. Profits earned by co-operative nonprofit association, though belonging to members thereof and not to association itself, are subject to claims of such association's creditors, and until such claims are liquidated there may not be a distribution of profits to the members.

2. Transfer of stock purchased by co-operative nonprofit association to its members pending action against it for breach of contract held in law to amount to fraud on creditors, though liability was contingent until claim was reduced to judgment, and notwithstanding C. S., sec. 5435, providing that question of fraudulent intent be deemed question of fact, and not of law.

3. Under C. S., sec. 6792, directing that issue in garnishment proceedings shall be tried as ordinary issues, transfer of stock by co-operative nonprofit association to its members could be

attacked in garnishment proceedings against members on ground of fraud, since purpose of such section was that all issues should be adjudicated in proceeding incident to main action, to avoid a multiplicity of suits.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Raymond L. Givens, Judge.

Action on contract. Judgment for plaintiff. Issues formed and trial had after execution issued by way of garnishment. Judgment for plaintiff. Garnishees appeal. Judgment *affirmed*.

A. L. Freehafer and J. P. Pope, for Appellant.

No person or corporation is bound to hold for creditors what in good morals does not belong to him but to another. (*Cottrill v. Smith*, 63 Iowa, 181, 18 N. W. 865; *Fairhurst v. Lewis*, 23 Ark. 435; *J. M. Robinson Norton Co. v. Stalcup*, 58 Ind. App. 370, 106 N. E. 395; *Rohrabacher v. Walsh*, 170 Mich. 59, 135 N. W. 907; *Gallman v. Perrie*, 47 Miss. 131; *Stone v. Stitt*, 62 Tex. Civ. App. 492, 132 S. W. 862; *Moog v. Farley*, 79 Ala. 246; *Blake v. Meadows*, 225 Mo. 1, 123 S. W. 868, 30 L. R. A., N. S., 1; *Martin v. Remington*, 100 Wis. 540, 69 Am. St. 941, 76 N. W. 614; *Bailey v. Wood*, 211 Mass. 37, Ann. Cas. 1913A, 950, 97 N. E. 902; *VanSickle v. Wells Fargo Co.*, 105 Fed. 16.)

The question of fraudulent intent is one of fact and not of law; nor can any transfer or charge be adjudged fraudulent solely on the ground that it was not made for a valuable consideration. (C. S., sec. 5435.)

Publisher's Note.

1. Co-operative marketing of farm products by producers' associations, see notes in 25 A. L. R. 1113; 33 A. L. R. 247.

See Corporations, 14a C. J., sec. 3072, p. 895, n. 45 New; sec. 3293, p. 1027, n. 39.

Fraudulent Conveyances, 27 C. J., sec. 113, p. 473, n. 25; sec. 170, p. 503, n. 68, p. 504, n. 70.

Property which has been alienated prior to judgment and which has passed into the hands of the transferee is not leviable under execution against the seller, and if the creditor desires to attack the transaction on the ground of fraud the proper mode of procedure is by creditor's bill. (*Preston-Parton Mill Co. v. Dexter Horton & Co.*, 22 Wash. 236, 79 Am. St. 928, 60 Pac. 412; *Doster v. Manistee National Bank*, 67 Ark. 325, 77 Am. St. 116, 55 S. W. 137, 48 L. R. A. 334.)

J. H. Helman and Sullivan & Sullivan, for Respondent.

A corporation or an association cannot close its business and distribute its assets to its stockholders or members to the prejudice of its creditors, as its assets constitute a trust fund for the payment of its debts and obligations. (Jones on Insolvent and Failing Corporations, secs. 109, 194, 234, 244, 248; *McIver v. Young Hardware Co.*, 144 N. C. 478, 119 Am. St. 970, 57 S. E. 169; *Beach v. Miller*, 130 Ill. 162, 17 Am. St. 291, 22 N. E. 464; *Fogg v. Blair*, 133 U. S. 534, 10 Sup. Ct. 338, 33 L. ed. 721; 8 Fletcher, Cyc. of Corps., secs. 5027, 5050, 5056; 6 Fletcher, Cyc. of Corps., sec. 3655; C. S., sec. 4715; *Weil v. Defenbach*, 31 Ida. 258, 170 Pac. 103; *Coppinger v. Lewiston Terminal Co.*, 34 Ida. 598, 203 Pac. 1068; *Stoltz v. Scott*, 23 Ida. 104, 129 Pac. 340; *Wilson v. Baker Clothing Co.*, 25 Ida. 378, 137 Pac. 896, 50 L. R. A., N. S., 239.)

If it be found, as contended by appellants, that said seventy-eight shares of stock prior to their distribution to the local organizations were held in trust for the local organizations, then under the interlocking organizations here shown it was nevertheless subject to execution herein. (11 C. J. 374; 5 R. C. L. 379; 23 A. L. R. 887, 893, 923; 42 L. R. A. 1144.)

T. BAILEY LEE, J.—On June 4, 1921, the Idaho-Oregon Fruit Growers' Association, a corporation, entered into a contract with plaintiff whereby it agreed to sell plaintiff, Associated Fruit Company, a corporation, fifty carloads

of apples at an agreed price. Defendant refused to carry out the contract. Plaintiff brought suit for the breach, securing a judgment for damages in the sum of $8,000; and thereafter attached on execution seventy-eight shares of stock of the New Plymouth Storage Company, in the hands of the above-named garnishees, claiming that such shares belonged to the defendant. After service of notice and interrogatories, the garnishees answered declaring that they had no shares of stock or other property of the defendant in their possession. Plaintiff filed separate denials to their answers specifically alleging that the distribution and transfer of the seventy-eight shares of stock of the New Plymouth Storage Company, Ltd., by the defendant was made for the purpose of defrauding the plaintiff from realizing anything on a breach of the contract in question in the main suit; that the defendant had requested a cancelation thereof, and the plaintiff had refused to allow it to be canceled; that thereupon the defendant repudiated said contract by resolution, and at the same meeting of the board of directors an order was entered for the distribution of said seventy-eight shares of stock among its locals; that defendant distributed and transferred said stock accordingly, without any consideration; and that thereafter defendant proceeded to close up its business and dispose of all of its assets, which consisted of but little besides said stock; that said shares of stock belonged to and were the property of said defendant, and not said locals; that a distribution thereof to its locals was illegal and void, and did not in any way affect the rights of the creditors of the said defendant in following said assets; that the same constituted a trust fund for the payment of the debts and obligations of said defendants; and that they could not be legally or lawfully divided up or distributed until the creditors had been fully paid.

The garnishees replied, admitting that certain shares of said stock had been transferred to them by the defendant without any payment therefor, and that said defendant closed out its business at Payette, and that defendant was

insolvent. But each garnishee denied that said distribution of stock was to defraud plaintiff, and specifically pleaded that the garnishees were the legal and absolute owners of the shares of stock in question, by reason of the fact that the defendant had purchased the same with funds which the garnishees claimed were held and regarded as trust funds for the local associations or fruit growers.

It was stipulated that the proceedings on the six attachments might be joined and tried as one. Trial was had upon the issues, resulting in a judgment for plaintiff. The garnishees appealed.

The court found and concluded, among other things, that the stock in question had been purchased with funds accumulated, in excess of expenditures, by defendant company during the period from its organization in 1913 until April, 1920, and became an asset of said company to be held in trust for its creditors; that at the time of the transfer and distribution of said stock to the garnishees, the plaintiff was a creditor of said defendant, and ''that the act of the defendant, in having said 78 shares of stock distributed and transferred to said garnishees, as aforesaid, prior to paying its creditors, was prejudicial to the rights of said plaintiff and resulted in preventing plaintiff from enforcing its judgment, and said shares of stock are held by said garnishees, respectively, for and on behalf of said defendant, and are subject to levy and sale to satisfy the judgment of said plaintiff in the principal action herein.''

Appellants contend that such findings and conclusions are erroneous, principally upon the theory that, the defendant being a nonprofit, co-operative organization, it could not as such acquire any property in profits earned, but that such profits belonged to and were held by it in trust for its membership, local or branch companies, and that therefore the stock bought with such funds of right belonged to the garnishees, and not to the defendant.

[1] Conceding that profits earned by co-operative, nonprofit associations belong to the members and not to the association itself, we understand the rule to be that such

profits are subject to the claims of such associations' creditors, and that, not until such claims are liquidated, may there be a distribution of profits to members. In fact, there can be no profits to distribute until debts are discharged or funds set aside to satisfy them. This is the rule of corporations generally. "The assets of a corporation constitute a trust fund for the payment of its debts, which cannot lawfully be divided up until the creditors of the corporation are paid." (*Weil v. Defenbach*, 31 Ida. 258, 170 Pac. 103; 6 Fletcher, Cyc. Corps., sec. 3655; Jones, Insolvent and Failing Corps., sec. 109; 10 Cyc. 1267; 7 R. C. L. 502, sec. 483; *McIver v. Young Hardware Co.*, 144 N. C. 478, 119 Am. St. 970, 57 S. E. 169; *Beach v. Williamson*, 78 Fla. 611, 9 A. L. R. 1438, 83 So. 860.)

[2]   The evidence abundantly supports the finding of the trial court that the stock was purchased with profits accumulated by the defendant in its business. It further shows that the defendant bought all the stock during the year 1920, and the most of it during the months of April and May; that in June, 1921, while plaintiff's contract was outstanding, defendant's board of directors appointed a committee to dispose of its office furniture and fixtures, and also a committee to take up the matter of disposing of the stock involved; that on August 19, 1921, at a meeting of the board, there was passed a resolution repudiating defendant's contract with plaintiff, and at the same meeting a resolution was passed authorizing the distribution and transfer of the stock to the garnishees, and that on September 1, 1921, the stock was transferred to all the garnishees except the Payette Fruit Distributors, which received its transfer on April 20, 1922. It will be noticed that all the stock was transferred after the breach of defendant's contract with plaintiff, and when defendant's board of directors knew a contingent liability was impending. At the time of the resolution of distribution, several of the board's members were directors and officers of the defendant membership locals, the present garnishees; and the conclusion is unavoidable that the purpose of all concerned was

to close up defendant's business and distribute its assets, thereby avoiding its liability to plaintiff, if any liability there were. Such liability depends upon whether or not, at the time of the distribution, plaintiff was in contemplation of law a creditor of the defendant. It had not, it is true, reduced its claim to judgment; and, until such was done, the liability was contingent. According to the weight of authority—

"A contingent liability is as fully protected against fraudulent and voluntary conveyances as a claim certain and absolute, and whoever has a claim or demand arising out of a pre-existing contract, although it may be contingent, is a creditor whose rights are affected by such conveyances and can avoid them when the contingency happens upon which the claim depends." (27 C. J. 473, sec. 113; Bump, Fraudulent Conveyances, 4th ed., sec. 503.)

In *Anderson v. Anderson,* 64 Ala. 403, the court stated the rule as follows:

"The term 'creditors' as employed by the statute, has been construed liberally, and not in a narrow, strict or technical sense. Whoever has a right, claim or demand, founded on contract, whether contingent or absolute, for the performance of a duty, or for the payment of damages if the contract should not be fully performed, has been regarded as a creditor, within the meaning of the statute, against whom a voluntary conveyance will not be supported, though no breach of the contract, furnishing a cause of action, may occur until after the execution of the conveyance."

Even though there may have been no actual intent on the part of defendant's board of directors to defraud plaintiff, the result of the transfer of the stock by them was to prevent plaintiff from enforcing its judgment, which in law amounts to fraud. In such case, a fraudulent intent is immaterial. (6 Fletcher, Cyc. Corps., sec. 5056; 27 C. J. 503, sec. 170.)

And this rule is not affected by a statute such as C. S., sec. 5435, providing that the question of fraudulent intent

shall be deemed a question of fact and not of law. (27 C. J. 504, sec. 170.)

[3] It is urged that plaintiff's remedy was restricted to a bill in equity, and that the stock transfer could not have been attacked in garnishment proceedings on the ground of fraud. C. S., sec. 6792, prescribing the filing of denials and replies in garnishment proceedings, directs that "the issue presented by such denial and reply shall be tried as ordinary issues between plaintiff and defendant, and judgment rendered thereon and execution issued accordingly." It was the evident intent of the legislature that all issues between plaintiff and garnishee be adjudicated in a proceeding incident to the main action, and that a multiplicity of suits be avoided. The denials and replies involved here raise the same issues as would be required to support a bill in equity and to all intents and purposes operate as such bill.

Judgment affirmed. Costs to respondent.

Wm. E. Lee, C. J., and Taylor, J., concur.