699 P.2d 1382

**NORTHWEST ROOFERS & EMPLOYERS HEALTH AND SECURITY TRUST FUND, and National Roofing Industry Pension Fund, Plaintiffs-Respondents,**

v.

**John BULLIS and Jennifer Bullis, husband and wife, and Joseph D. Becker, d/b/a Modern Roofing and Insulating Company, Defendants-Appellants.**

No. 15357.

Supreme Court of Idaho.

May 1, 1985.

Michael John Gaffney, and James G. Reid, of Anderson, Kaufman, Ringert & Clark, Boise, for defendants-appellants.

Andrew Marshall Chasan, of Lyons, Bohner, Chasan & Walton, Boise, for plaintiffs-respondents.

DONALDSON, Chief Justice.

The trustees of Union Pension, and Health and Security Funds initiated this action to recover contributions allegedly

due the Funds from defendants-appellants, John and Jennifer Bullis. In 1976, the Bullis's were the principal officers of United Roofing, Inc. On June 10 of that year, United Roofing entered into a Collective Bargaining Agreement with Local # 209 of the United Slate Tile and Composition Roofers, Damp and Waterproof Workers' Association (the Union). (An interim agreement substantially identical to the final agreement was signed on May 31, 1976.)

The agreement contained a union security provision which required all United Roofing employees to become union members after seven days of employment. Under the terms of the agreement, United Roofing was obligated to contribute a specified amount of money for each hour worked by its employees to the National Roofing Industry Pension Fund (Pension Fund) and to the Northwest Roofers Health and Security Trust Fund (Health and Security Fund). In addition, the employer agreed to be bound by all the terms of the Pension Fund Trust Agreement, which was stated to be, although in fact it was not, attached to the Collective Bargaining Agreement. The employer was also to be bound by the terms of the Trust Agreement creating the Health and Security Fund which was stated to be available on request.

The Union representatives and the Bullises did not discuss the terms of the Pension Fund or Health and Security Fund, nor did they discuss the union security agreement provision at the time they entered into the Collective Bargaining Agreement. The Bullises did not request copies of these documents and no copies were ever provided to them.

As there were not enough union members available to do all the roofing work United Roofing required, nonunion employees were hired. Most of these employees never joined the Union, although they worked more than seven days. United Roofing did not make contributions to the Health & Security Fund or the Pension Fund on behalf of these nonunion employees. In addition, it failed to make contributions to the Funds for roofing piecework and subcontracting work and for employee travel time to and from jobs. The district court found that the local union officials were aware of these discrepancies and that they acquiesced in the situation.

On April 7, 1978, United Roofing was sold to Joseph Becker and the corporate charter forfeited. Subsequently, the business was assigned back to United Roofing, Inc. which in turn assigned it to John and Jennifer Bullis as individuals.

In September 1979, the Trustees of the Pension Fund and Health & Security Fund requested an audit of United Roofing covering the period from June 1976 through March 1978, when the business was sold. (The Trust Agreements provided for routine audits, and for special audits if an irregularity or problem existed.) The audit was performed by Richard Steiner, a CPA. Mr. Steiner met with Mrs. Bullis on September 12, 1979, and requested all the payroll records from United Roofing. On the basis of those records, Mr. Steiner determined that $11,989.39 in total contributions was owing.

On December 4, 1979, the Trustees filed a complaint in district court seeking to recover the contributions allegedly due. The district court held that under the Collective Bargaining Agreement, United Roofing was liable for contributions for (1) all nonunion employees who were performing roofing work; (2) employee travel time; and (3) piecework and subcontracting work. The court further held that pursuant to I.C. § 30–611, the Bullises were individually liable for the obligations of United Roofing. The court awarded the Trustees judgment against the Bullises in the amount of $23,342.78, including $11,602.50 in attorney fees. The Bullises have appealed from that judgment.

Four issues are presented by this appeal:

1. Did the trial court err in holding United Roofing and John and Jennifer Bullis

responsible for contributions for nonunion employees under the Collective Bargaining Agreement?

2. Did the trial court err in not sustaining the Bullis's defenses of laches and estoppel?

3. Did the trial court err in holding the Bullises individually liable for the obligations of United Roofing?

4. Did the trial court award the plaintiffs an unreasonable sum for attorney fees?

We will discuss each issue in turn.

### I.

The Bullises assert that the Collective Bargaining Agreement and the Trust Agreements, when read together, are ambiguous about whether contributions were required on behalf of nonunion employees. Thus, they contend that parole evidence was admissible to explain the ambiguity. They assert that the uncontradicted parole evidence establishes that no one explained to them, at the time they signed the Collective Bargaining Agreement, that nonunion employees were covered; that Mr. Bullis did not believe nonunion members were covered; that a former Union representative testified that he did not believe Collective Bargaining Agreements covered nonunion employees; and that the Collective Bargaining Agreement was capable of different interpretations as to the meaning of the term "covered employees."

■ We agree with the district court that the agreements unambiguously call for payments to be made on behalf of all employees, nonunion as well as union, and, thus, that the parole evidence was properly rejected. The Collective Bargaining Agreement required United Roofing to make contributions of 30 cents per hour to the Pension Fund and of 60 cents per hour to the Health & Security Fund for each compensated hour worked by each employee covered by the Agreement. Both the Pension Fund Trust Agreement and the Health &

Security Fund Trust Agreement refer to the Collective Bargaining Agreement for the definition of "covered employees." The Pension Fund Trust Agreement defined a "covered employee" to include "all persons covered by Collective Bargaining Agreements between the Employers and the Union...." Similarly, the Health & Security Fund Trust Agreement defined a "participating employee" as "any individual employed by a participating employer who is covered by a collective bargaining agreement, ... and for whom the employer makes ... contributions to the Trust Fund...."

■ The Collective Bargaining Agreement makes no distinction between union and nonunion employees, rather, it expressly covers all employees engaged in roofing work. The Agreement states that it was entered into by the parties to establish "specific rules and regulations to govern employment, wage scales, and working conditions of *employees engaged in the application and installment described in Article V.*" Article V, Jurisdiction, provides that the Agreement applies to the application and installation of various roofing materials. It is undisputed that United Roofing's nonunion employees were engaged in the application and installation of roofing materials. Thus, those employees are necessarily covered by the Collective Bargaining Agreement.

■ In addition, we note, as did the district court, that the Collective Bargaining Agreement provided for a union shop. All employees performing roofing work were required to join the Union after the seventh working day of their employment and to maintain membership in good standing as a condition for continued employment.

"*Section 2.* All workmen employed by the Employer to perform work within the properly determined craft jurisdiction of the respective Union shall become members of the Union *after* the seventh working day of their respective employ-

ments or date of this contract, whichever is later, and shall thereafter maintain membership in good standing in the Union as a condition of employment, provided that membership is available to such employees on the same terms and conditions generally applicable to other members. The Employer agrees to supply the Union with a list of new hires, but not more frequently than every seven (7) days."

By agreeing to this provision, United Roofing expressly obligated itself to make contributions for all its employees.

The plain language of the Collective Bargaining Agreement obligated United Roofing to make monthly contributions to the Trust Funds for each employee performing roofing work. Thus, we agree with the trial court's conclusion that "at the time the defendant entered into the collective bargaining agreement, he knew or should have reasonably known that he was obligating himself to make payments to the trust funds for all employees performing roofing work." We further note that our conclusion today is in accord with the results reached by other courts when construing similar language in bargaining and trust fund agreements. See, e.g., Audit Services, Inc. v. Rolfson, 641 F.2d 757 (9th Cir.1981); Manning v. Wiscombe, 498 F.2d 1311 (10th Cir.1974); Markt v. Ro-Mart, Inc., 471 F.Supp. 1292 (N.D.Cal.1979); Restaurant Emp., etc. v. Rhodes, 90 Wash.2d 162, 580 P.2d 611 (1978).

## II.

The Bullises next assert that the claim for unpaid contributions should be barred by the equitable defenses of laches and estoppel. Because this action was brought pursuant to Section 301 of the Labor Management Relations Act (29 U.S.C. § 185), the availability of these defenses is controlled by federal common law. Teamsters Local v. Lucas Flour Co., 369 U.S. 95, 103, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1961); Audit Services, Inc. v. Rolfson, supra, at 762.

The Ninth Circuit has set forth the elements of estoppel in the labor law context as follows:

"(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." Audit Services, supra, at 762.

Applying the above test to the record in this case, we find no indication that the Trustees were aware of United Roofing's failure to make contributions for nonunion employees. Nor do we find any evidence of representations by the Trustees on which the Bullises could have reasonably relied in concluding that no contributions were due. At trial, the Bullises asserted that local union officials were aware of and acquiesced in their failure to make contributions for nonunion employees, and the trial court so concluded. However, the Union's acquiesence cannot be imputed to the Trustees. In the absence of a clearly expressed intent to the contrary, a union's breaches are not a defense to an employer's duty to contribute to employee-benefit funds. Lewis v. Benedict Coal Corp., 361 U.S. 459, 470–71, 80 S.Ct. 489, 495–96, 4 L.Ed.2d 442 (1960); Manning v. Wiscombe, 498 F.2d at 1313. The Trustees stand in the position of third-party beneficiaries to the collective bargaining agreement and their rights vest when that document is executed. A union's subsequent conduct cannot alter the express terms of a collective bargaining agreement without the consent of those third-party beneficiaries. See Lewis and Manning, supra. Thus, we conclude that the defense of estoppel is inapplicable.

The defense of laches is also inapplicable in this case. The Bullises assert that the Trustees delayed unreasonably in initiating an audit of United Roofing. They assert that the Trustees had a duty to

perform periodic audits which they breached in this case. However, the Trust Agreement evinces no such affirmative duty. The Health & Security Fund Trust Agreement gives the Trustees the authority to audit participating employer's records "as they deem necessary in the administration of the Trust Fund." The Pension Fund Trust Agreement simply gives its Trustees the authority to do all acts they deem necessary and proper to enable them to provide pension benefits to the beneficiaries of the Fund.

In the present case, the Trustees did not discover the deficiencies in contributions until after the 1979 audit was performed. The trial court found that the only delay in effectuating the audit was due to the Bullises failure to provide the necessary records. Upon discovery of the deficiencies, the Trustees acted promptly to vindicate . their claim. We conclude that the appellants have failed to show any unreasonable delay and, thus, that the doctrine of laches does not apply.

### III.

▮▮▮▮ The trial court held that, pursuant to I.C. § 30–611, the Bullises were individually liable for the debts of United Roofing.[1] However, as the appellants noted in oral argument, the trial court neglected to define the scope of the Bullis's liability. Under I.C. § 30–611, the directors of a forfeited corporation are liable only in their capacity as corporate trustees. *See Smith v. Great Basin Grain Co.*, 98 Idaho 266, 561 P.2d 1299 (1977); *Caxton Printers,*

*Ltd., v. Ulen*, 59 Idaho 688, 86 P.2d 468 (1939). The substantive cause of action is against the corporation and the trustees are individually liable only to the extent they receive corporate assets or the proceeds from the sale thereof.

▮▮▮ At trial, Mr. Bullis testified that he and his wife received $27,653.00 from the sale of United Roofing. However, the trial court made no findings on this issue. Thus, we remand this case to the trial court for a determination of the amount of total proceeds the Bullises received from the sale of United Roofing. The Bullis's liability to the Trustees is necessarily limited to this amount.

### IV.

Finally, appellants object to the award of attorney fees at the trial level. The trial court awarded the Trustees $11,602.50 in attorney fees on the basis of the following provision in the Health & Security Trust Agreement:

**6. Attorney Fees and Court Costs.**

Further, in the event the Trustees place the account in the hands of legal counsel for collection, the delinquent employer shall be liable for reasonable attorney fees (with a minimum of $25.00) and for all reasonable costs incurred in the collection process, including court costs, audit fees, etc. The Trustees shall have the authority, however, to waive all or part of the attorney fees or collection costs for good cause shown.

Appellants assert that in light of the gross amount of the judgment, the attorney fee award was excessive and unreasonable.

---

1. I.C. § 30–611 reads as follows:
   "**30–611. Trustees for defaulting corporation and stockholders [Repealed effective July 1, 1981].**—In all cases of forfeiture under the provisions of this chapter, the directors or managers in office of the affairs of any domestic corporation whose charter may be so forfeited, or of any foreign corporation whose right to do business in this state may be so forfeited, or any other person or persons who may be appointed by any court of competent jurisdiction to perform that duty, are deemed to be trustees of the corporation and stockholders or members of the corporation whose power or right to do business is forfeited, and have full power to settle the affairs of the corporation, and to maintain or defend any action or proceeding then pending in behalf of or against any of said corporations, or to take such legal proceedings as may be necessary to fully settle the affairs of said corporation, and such directors or managers, as such trustees, may be sued in any of the courts of this state after such forfeiture by any person having a claim against any of said corporations."

The Trustees were the prevailing party at the trial level and, therefore, an award of attorney fees under the Agreement was proper. I.R.C.P. 54(e)(1). The trial court issued written findings setting forth the factors it evaluated in determining the amount of attorney fees:

"A. Time and labor required was substantial.

"B. The legal issues presented are difficult and have not previously been resolved by the Idaho courts.

"C. Plaintiff's counsel performed in a skillful manner in [sic] area which requires expertise greater than that normally possessed by general practitioners.

"D. The rates charged were well within the normal range of customary charges for similar work.

"E. The fee was fixed.

"F. The litigation was protracted.

"G. The plaintiff prevailed on virtually the full amount of its claim.

"H. The amount of attorney fee's requested will almost equal the judgment.

"I. The Court does not find that there is any 'undesirability' of the case.

"J. The plaintiff's counsel and plaintiff do have an ongoing relationship but all fees appear related to this action.

"K. There are no awards in similar cases.

"L. The amount of attorney fees generated in this case is reasonable. The amount of hours is reasonable."

Considering the above factors, we do not feel that the award was unreasonable. In view of our holding today, the Trustees are also the prevailing party on appeal, and, accordingly, are entitled to reasonable costs and attorney fees on appeal.

The decision of the district court is affirmed as modified by Part III of this opinion and this case is remanded with directions that the district court make a finding as to the net amount appellants received from the sale of United Roofing, Inc.; the total judgment, including costs and attorney fees, not to exceed that amount.

Costs and attorney fees to respondents.

SHEPARD, BISTLINE and HUNTLEY, JJ., concur.

BAKES, J., concurs in the result.