753 P.2d 267

**NORTHWEST ROOFERS & EMPLOYERS HEALTH AND SECURITY TRUST FUND, and National Roofing Industry Pension Fund, Plaintiffs–Respondents–Cross Appellants,**

v.

**John BULLIS and Jennifer Bullis, husband and wife, and Joseph D. Becker, d/b/a Modern Roofing and Insulating Company, Defendants–Appellants–Cross Respondents.**

No. 16550.

Court of Appeals of Idaho.

March 29, 1988.

**58**

James G. Reid of Ringert, Clark, Harrington, Reid, Christenson & Kaufman, Boise, for defendants-appellants-cross respondents.

Charles B. Bauer of Lyons, Bohner, Chasan & Walton, Boise, for plaintiffs-respondents-cross appellants.

SWANSTROM, Judge.

The plaintiffs, two employee "Trust Funds," obtained a judgment against the statutory trustees of a defunct corporation, John and Jennifer Bullis. The judgment was for money due from the corporation to the Trust Funds under a labor contract. In an earlier appeal, the Idaho Supreme Court affirmed the judgment. However, the Court noted that the Bullises' trustee liability on the judgment could not exceed the amount of proceeds they had received from sale of corporate assets.[1] Because no finding had been made by the district court on this point, the Court remanded the case for a finding as to the amount of proceeds received. If the corporate proceeds received were less than the judgment, the judgment against the Bullises as trustees would have to be modified accordingly. *See Northwest Roofers v. Bullis,* 108 Idaho 368, 699 P.2d 1382 (1985) (hereafter *Bullis I*).

On remand, the district court made a supplemental finding, based on evidence already in the trial record, that the Bullises had received $27,653 as proceeds from the sale of corporate assets. This amount exceeded the $23,343 judgment of the Trust Funds. Consequently, the judgment was not modified. The Trust Funds were free to collect the full amount of their judgment from the Bullises. The Bullises have taken a second appeal. The issues which the Bullises raise here all center around the proposition that the district court erred, as a matter of law, in not allowing the Bullises to prove the "net" amount of proceeds held by them after payment of certain other creditors of the defunct corporation. We affirm.

Preliminarily, it is important to note the language of the Supreme Court's directive on remand in *Bullis I.* After discussing the scope of the Bullises' liability, the Supreme Court remanded "this case to the trial court for a determination of the amount of *total* proceeds the Bullises received from the sale of United Roofing." *Bullis I,* 108 Idaho at 373, 699 P.2d at 1387 (emphasis added). However, in a summary paragraph the Supreme Court concluded its opinion as follows: "[T]his case is remanded with directions that the district court make a finding as to the *net* amount appel-

---

1. Statutory trustees have limited liability. They are liable only to the extent they receive corporate assets or proceeds. This individual trustee liability is separate and distinct from personal liability. A trustee's liability is satisfied from the corporate assets received, not from the trustee's personal assets. However, as will be explained, statutory trustees may become personally liable in certain circumstances.

lants received from the sale...." *Id.* at 374, 699 P.2d at 1388 (emphasis added). In the remand proceedings, the Bullises relied heavily on the latter language. A review of those proceedings is in order.

As we have noted, the district court found the Bullises had received $27,653 in proceeds. The Bullises objected to this supplemental finding, claiming it was not in accord with the Supreme Court's directive. They asserted the words "net amount" meant that amount of proceeds remaining in their possession at the time judgment was entered. A stay of execution was granted and a hearing on their objection was held. At the hearing the Bullises maintained that they had paid other creditors out of the proceeds, and therefore, the Trust Funds were entitled to execute only on the remaining amount—which was about $3,000. Following the hearing the Bullises were allowed thirty days to present additional facts in support of their objection.

Four days after that time period expired, the district court filed an order denying the objection. Later that same day the Bullises filed an affidavit containing the additional facts. This affidavit, made by Jennifer Bullis, listed six creditors of United Roofing, the amounts paid to each, and the dates of payment. This was the first time during the proceedings of this case that the Bullises had presented specific evidence of payments to other creditors. Pursuant to I.R.C.P. 60(b) the Bullises moved to have the district court set aside or reconsider its order. They also requested a new trial under I.R.C.P. 59(a) on the issue of liability. By a written order the court denied the Bullises' motions. It is from this order that the Bullises have appealed.

After the district court entered its order denying the Bullises' motions, the Trust Funds' judgment was fully satisfied from a bond that had been posted. A hearing was later held on the Trust Funds' motion to determine whether the Bullises would be personally liable for additional attorney fees incurred by the Trust Funds following the remand. No additional attorney fees were awarded. The Trust Funds then cross-appealed, challenging the denial of additional fees for the post remand proceedings.

## I

■ We first examine the Bullises' contention that the district court erred in denying their motions. An appellate court will not overturn a trial court's ruling on either motion absent an abuse of discretion. *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986) (trial court has broad discretion in ruling upon a motion for a new trial); *Bull v. Leake*, 109 Idaho 1044, 712 P.2d 745 (Ct.App.1986) (decision to grant or deny a motion under Rule 60(b) is within sound discretion of trial court). Here, the Bullises challenge only the principles of law relied upon by the district court in exercising its discretion. Because the Bullises' legal theory is the same for both motions, we will review them together.

■ Initially, we deem it necessary to clarify the Bullises' present position. As indicated, they maintain that the words "net amount" meant the amount of proceeds they received from sale of the corporate assets, less payments to other creditors. We think they urge a strained reading of the Supreme Court's language that is inconsistent with the opinion itself. It appears clear to us that the words "net amount" refer to the amount of proceeds actually received *at the time of sale;* i.e., gross sale amount less the costs of sale. We base this in part on what the records and the briefs show was presented to the Supreme Court in *Bullis I.*[2] Thus, the

---

2. The record of *Bullis I* is before us in this appeal. The Trust Funds' complaint alleged that the Bullises were liable for the obligations of the defunct corporation pursuant to I.C. § 30–611. The Bullises' answer denied all liability. Essentially, their position at trial was that because the defunct corporation never owed the Trust Funds any additional sums, there could be no liability on the part of the statutory trustees. The Bullises' answer said nothing about the limits of their liability determined by the amount of corporate proceeds received. Neither did the Bullises allege, by way of an affirmative defense, that their liability as trustees ought to be further limited because the available corporate assets had largely

Bullises have built their legal argument on a faulty foundation. Their argument, however, raises some important questions concerning the duties of statutory trustees. Although we have serious doubts as to the timeliness of this argument, we will discuss its merits.

■ The substance of the Bullises' argument is that as statutory trustees of a forfeited corporation they had the right to pay some creditors rather than others and, therefore, were not required to set aside an amount to cover the Trust Funds' contingent debt. We begin by exploring the general duties of statutory trustees. Under former I.C. § 30–611,[3] the directors or managers in office of a forfeited corporation are deemed to be trustees of the corporation and have full power to settle the affairs of the corporation, maintain or defend an action pending in behalf or against the corporation, and may be sued by any person having a claim against the corporation. Statutory trustees are under a fiduciary obligation to wind up the affairs of the corporation, collect its assets, pay the creditors and distribute the balance, if any, ratably among the stockholders. *Fortner v. Cornell*, 66 Idaho 512, 163 P.2d 299 (1945). The statutory trustees are charged with due and faithful execution of such trust. *Id.*

■ As our Supreme Court noted in *Bullis I*, this fiduciary duty means that statutory trustees are individually liable to the corporation's creditors only to the extent they receive corporate assets or proceeds from the sale thereof. The statutory trustees may also be personally liable for any breach of their fiduciary obligation. *Smith v. Great Basin Grain Co.*, 98 Idaho 266, 561 P.2d 1299 (1977). We must now determine whether the Bullises faithfully executed their fiduciary duty.

■ When the liquidated assets of a defunct corporation are insufficient to meet its debts, they should be distributed equitably or ratably among the creditors. *See generally* 16A FLETCHER CYC. CORP. § 8186 (rev.perm.ed. 1979); 19 AM.JUR.2D *Corporations* § 2863 (1986). *Compare* I.C. § 30–1–87(b) (dissolved corporation shall pay or adequately provide for the payment of all its obligations). Further, in respect to a contingent debt, the statutory trustees are obligated to refrain from distributing that amount of available corporate assets which may be required to satisfy the contingent debt. FLETCHER, *supra,* at § 8186.

Here, the debt owed to the Trust Funds was contingent. Yet, the Bullises made no provision to allow for this contingency. Neither did they equitably or ratably distribute the proceeds they held. That they had actual knowledge of the contingent debt prior to distributing the proceeds is made clear by the following facts. The Trust Funds filed suit in 1979. According to Jennifer Bullises' affidavit, four of the corporation's creditors were paid between 1981 and 1983. The remaining two creditors were paid periodically between 1978 and 1981. As noted, the Bullises contend they had a right to prefer the claims of these creditors over the contingent claim of the Trust Funds.

The Bullises' position has some support in early case law. In *Wilson v. Baker Clothing Co.*, 25 Idaho 378, 137 P. 896 (1913), our Supreme Court held that a corporation, although insolvent, has the same power as a natural person to prefer one or more creditors to the exclusion of others, unless it is prevented by some express stat-

---

been used to pay other creditors of the defunct corporation.

The appellate briefs in *Bullis I* likewise contain no suggestion or argument that the Bullises had paid other corporate creditors out of the total proceeds and thus were liable to Trust Funds only to the "net" amount remaining. Indeed, if that suggestion had been made to the Supreme Court it would have been outside the record because, as we have noted, in the trial

preceding *Bullis I* no evidence was offered by the Bullises under their present theory to show that the corporate assets had been properly disbursed to pay other creditors of the corporation.

3. Idaho Code § 30–611 was in effect at the time of this action. It was repealed effective July 1, 1981. Section 30–1–136 of the Idaho Business Corporation Act, effective July 1, 1981, now codifies the duties of statutory trustees.

utory provision. The Court also rejected the common law trust fund theory, holding that "the assets of a corporation are not in any proper sense a trust fund for creditors, so long as no proceedings for a winding up have been instituted...." *Id.* at 386, 137 P. at 898. *Wilson* dealt with the validity of a payment on a check made by an insolvent, although still operating, bank. This reasoning was followed in another case, *Pettengill v. Blackman*, 30 Idaho 241, 164 P. 358 (1917), also involving an operating, insolvent bank.

However, in *Nelson v. Jones*, 38 Idaho 664, 224 P. 435 (1924), the Supreme Court distinguished the rule of preference in *Wilson* and *Pettengill*. The Court concluded that a trustee of a forfeited and insolvent corporation holds the corporate funds in trust and cannot prefer himself, even if done in the due course of business, to the injury of the corporation's creditors. Moreover, the Supreme Court has held subsequent to *Wilson* that the assets of a forfeited corporation constitute a trust fund for the payment of its debts, and that the assets cannot be distributed until the debts are discharged or funds are set aside to satisfy them. *Associated Fruit Co. v. Idaho–Oregon Fruit Growers' Association*, 44 Idaho 200, 256 P. 99 (1927); *Weil v. Defenbach*, 31 Idaho 258, 170 P. 103 (1918).

We call attention to the fact that statutory trustees are under a duty to wind up the affairs of the corporation and are in the position of fiduciaries, a status quite different from natural persons possessing powers of preference. In the first appeal the Bullises seemed to recognize this distinction. In their reply brief they said:

> However, if United Roofing, Inc., at the time of forfeiture, had assets, the Bullises were under a fiduciary duty to ensure that the assets would be preserved and the affairs of the corporation wound up in such a manner as to protect the creditors. (See *Smith vs. Great Basin Grain Company*, supra.) In this case, it is the position of the Bullises,

which the Trial Court simply ignored, that in the event a judgment were rendered against the Bullises as trustees for a forfeited corporation, the amount of the judgment would have to be necessarily limited to the extent that they, as trustees, held corporate property or the proceeds thereof. (See *Caxton Printers, Ltd., vs. Ulen*, 59 Idaho 688 [86 P.2d 468] (1939).)

To now argue that the trustees had a fiduciary duty to some, but not to *all*, of the creditors is not persuasive. This would be exactly the effect of allowing the trustees to choose some creditors while ignoring the claims of others.

Generally, statutory trustees may not prefer one or more creditors at the expense of another; especially when the corporation's assets are less than its liabilities.[4] FLETCHER, *supra*, at §§ 8186, 8180; 19 AM.JUR.2D *Corporations* § 2863 (1986). This is based upon the common law trust fund theory which is that the assets of a dissolved or defunct corporation become a trust fund against which the corporation's creditors have a claim. FLETCHER, *supra* at § 8186. As noted, Idaho now follows this theory. Therefore, we hold that where a dissolved or forfeited corporation's assets are less than its liabilities the corporate trustees may not prefer creditors. Moreover, as the Court in *Associated Fruit Co. v. Idaho–Oregon Fruit Growers' Association*, *supra*, noted, the term "creditors" is to be liberally construed. A creditor whose claim is contingent is entitled to the same consideration and protection as a creditor whose claim is certain. *Id.* 44 Idaho at 206, 256 P. at 100.

Accordingly, we are constrained to view the unilateral actions of the Bullises as improper. To deplete the available corporate assets by paying some creditors in full at the expense of another creditor is a breach of fiduciary duty. Although the Trust Funds could have sought the appointment of a receiver under I.C. § 8–601(5), the lack of such an appointment does not

---

4. To this general rule, of course, there are exceptions not applicable in this case, such as where a creditor may hold security or where a particular type of corporate obligation may be given legal preference over general creditors.

relieve the Bullises of their fiduciary obligations. Thus, the Bullises' argument lacks merit.

. ▮ We hold today that the Bullises were mistaken in believing that, as statutory trustees, they could pay corporate creditors on a first-come first-served basis. Thus, the district court was correct in rejecting the Bullises' evidence proferred, after the trial and after the remand, as to the amount of "net proceeds" remaining after the preferential payment of some of the creditors.[5]

▮ Another issue raised by the Bullises is whether the district court properly made its supplementary finding without receiving additional evidence and whether the finding is supported by substantial, competent evidence. The district court's factual finding as to the net amount of corporate proceeds received by the Bullises comported with the Supreme Court's directive on remand. To make such a finding, no additional evidence was required. *E.g., Industrial Inv. Corp. v. Rocca,* 102 Idaho 920, 643 P.2d 1090 (Ct.App.1982). The finding is supported by substantial and competent evidence and will not be disturbed on appeal. I.R.C.P. 52(a).

We note here that the Trust Funds have urged additional grounds for upholding the district court's order denying the Bullises' motions. However, because we choose to address the merits of the legal defense raised by the Bullises in their post-trial motions, we do not need to address the additional arguments made by the Trust Funds. Instead, we hold, as did the district court, that the Bullises have not shown a legal defense to the *amount* of damages previously awarded against them.

## II

· We now examine an issue raised by the Trust Funds in their cross-appeal. They contend the district court erred in not determining the Bullises to be personally liable for additional attorney fees in excess of the proceeds they held as statutory trustees. The Trust Funds maintain that the Bullises should be personally liable for the additional fees caused by the unjustified and protracted litigation of this case. We note that the Trust Funds' judgment included a substantial amount for reasonable attorney fees incurred through trial in the district court. The Supreme Court awarded additional fees for the first appeal. Those fees were awarded pursuant to provisions in the trust agreements. Now the Trust Funds have incurred additional fees which—when added to the judgment—exceed the amount of the corporate proceeds, $27,653, received by the Bullises.

▮ As noted in *Bullis I,* "[t]he substantive cause of action is against the corporation and the trustees are individually liable only to the extent they receive corporate assets or the proceeds from the sale thereof." 108 Idaho at 373, 699 P.2d at 1387. The corporation was held to be liable for fees because its contract with the Trust Funds so provided. Additionally today, courts "shall award" fees against the employer where suits are successfully brought under 29 U.S.C. §§ 1132(g) and 1145 to collect delinquent contributions to employee trust funds.

▮ Once the corporation has incurred liability for costs and fees for default on its contractual commitments, that liability can be passed on to the statutory trustees to the extent that such trustees receive corporate assets. However, a claim against the personal liability of the statutory trustees must be based upon some independent con-

---

**5.** Although we hold that statutory trustees must apportion net proceeds ratably among general corporate creditors, we recognize that the judgment entered and affirmed in *Bullis I* gives the Trust Funds more than would have been received on a pro rata basis. However, this result flows from the failure by the Bullises to present any issue in *Bullis I* regarding the inadequacy of proceeds to satisfy a judgment either for the full amount claimed or for a prorated amount. In-

deed, even in the present appeal, as we have seen, the Bullises have made no argument that the Trust Funds should receive a prorated amount. Instead, they have asserted, mistakenly, that the Trust Funds are entitled only to the money which remained after the other creditors were paid preferentially. Thus, if the Bullises now find themselves personally liable in this case, it is due to their litigation posture and their decision to prefer other general creditors.

duct or action unrelated to the original claim brought against the defunct corporation. *See, e.g., Nelson v. Jones, supra.* The Trust Funds have attempted to establish such personal liability through two theories: (1) the Bullises breached their duties as statutory trustees and thus are personally liable to the Trust Funds; and (2) the Bullises are continuing to conduct corporate business by pursuing this litigation and thus are personally liable for any obligations incurred.

We have held that the Bullises breached their duty as statutory trustees by failing to provide for the Trust Funds' contingent debt. But, this breach did not damage the Trust Funds nor is it the cause of the sought-after additional attorney fees. The Trust Funds have not shown facts demonstrating fraud, bad faith or other actionable wrongs committed by the Bullises which may provide a basis for awarding attorney fees against the trustees personally. Neither are we persuaded that this action was defended frivolously, unreasonably or without foundation so as to render the Bullises personally liable for fees incurred by the Trust Funds.

The litigation pursued by the Bullises was conducted as part of their duty under I.C. § 30–611 to defend an action brought against the defunct corporation. This is not conducting corporate business as usual. Unlike continuing the normal operations and affairs of the corporation, the defense of this lawsuit does not give rise to personal liability. *Compare Smith v. Great Basin Grain Co., supra.* We believe the Trust Funds have not shown grounds for an award of costs and attorney fees beyond the limits set by the Supreme Court in *Bullis I.*

In summary, we affirm the district court's post remand orders. Because neither party has wholly prevailed in this appeal, no costs or attorney fees are awarded.

WALTERS, C.J., and BURNETT, J., concur.