**In re the Marriage of Jeffrey S. DAVIS, Appellee,**

and

**Gail Davis, n/k/a Gail Nguyen, Appellant.**

No. 09CA1002.

Colorado Court of Appeals, Div. IV.

Feb. 17, 2011.

Law Offices of Marcy L. Rothenberg–Romer, Marcy L. Rothenberg–Romer, Denver, Colorado, for Appellee.

Law Office of Cheryl A. Miller, P.C., Cheryl A. Miller, Centennial, Colorado, for Appellant.

Opinion by Judge DAILEY.

In this post-dissolution of marriage matter between Gail Davis, now known as Gail Nguyen (wife), and Jeffrey S. Davis (husband), wife appeals from the trial court's order modifying child support and denying her requests to hold husband in contempt and for attorney fees. As to the child support provisions of the order, we affirm in part, reverse in part, and remand for further proceedings. We affirm the provisions of the order concerning contempt and attorney fees.

### I. Child Support

■■ We review child support orders for abuse of discretion because the issue of the parents' financial resources is factual in nature. *In re Marriage of Atencio*, 47 P.3d 718, 720 (Colo.App.2002). We review de novo, however, whether the trial court applied the correct legal standard to its findings of fact. *Id.*

### A. Retroactive Application of Section 14–10–115(6)(b)(I)

Wife contends that the trial court erred when modifying child support by applying the January 2008 revisions to section 14–10–115(6)(b)(I), C.R.S.2010, retroactively to her 2006 motion to modify child support. We agree, but only in part.

■ Initially, we reject husband's argument that wife is barred from raising this issue because she failed to provide the notice required by C.A.R. 44(a) that she was raising a question involving the constitutionality of a statute. Wife does not contend that the statute is facially unconstitutional, but rather only that applying it retroactively is unconstitutional. Accordingly, she is not barred from raising this issue. *See In re Estate of Becker*, 32 P.3d 557, 560–61 (Colo.App.2000) (holding that lack of C.A.R. 44(a) notice does not bar party's argument that statute is unconsti-

tutional as applied retroactively), *aff'd sub nom. In re Estate of DeWitt*, 54 P.3d 849, 861 (Colo.2002).

■ "A statute is applied prospectively if it operates on transactions that occur after its effective date; it is applied retroactively if it operates on transactions that have already occurred or on rights and obligations that existed before its effective date." *Specialty Rests. Corp. v. Nelson*, 231 P.3d 393, 399 (Colo.2010). A statute is presumed to operate prospectively and may be interpreted to operate retroactively only if the legislature clearly indicates that intent. *Id.*

■ Here, during the course of the child support modification hearing, which began in December 2007 and concluded in February 2009, section 14–10–115(6)(b)(I) was amended to allow for a deduction when calculating child support for all children not of the parties' marriage, including children born after the children of the marriage, who were not included under the previous version of the statute. *See* ch. 379, sec. 7, § 14–10–115(6)(b)(I), 2007 Colo. Sess. Laws 1651. The legislature specified that the new version of the statute "shall take effect January 1, 2008." Ch. 379, sec. 29, 2007 Colo. Sess. Laws 1668. Providing an effective date is not sufficient alone to indicate an intent to apply a statute retroactively. *See Kohut v. Hartford Life & Accident Ins. Co.*, 710 F.Supp.2d 1139, 1150 (D.Colo.2008) (recital that act takes effect on a particular date does not support conclusion that legislature intended retroactive application). Our review has not found any indication in the legislative history to overcome the presumption of prospective application of section 14–10–115(6)(b)(I).

■ Accordingly, we agree with wife that the trial court erred by applying the new provisions of the statute to the parties' child support obligations that accrued before the January 1, 2008, effective date of the amended statute. Because child support is a continuing obligation that is always modifiable under the provisions of section 14–10–122(1)(a), C.R.S.2010, however, we perceive no error by the court in applying the revised

statute to the parties' child support obligations that accrued after the effective date of the statute. *See McDonough v. McDonough,* 458 N.W.2d 344, 345–46 (N.D.Ct.App. 1990) (allowing modification of child support payments accruing after effective date of statutory amendments because, "[a]lthough the amendment may not be retroactively applied to child support accruing before the effective date, an obligor's child support obligation is a continuing obligation which may be modified prospectively" (citation omitted)); *Mazzuckelli v. Mazzuckelli,* 106 Ohio App.3d 554, 666 N.E.2d 620, 622–23 (1995) (allowing application of statutory amendments to child support payments accruing after amendment's effective date because the child support obligation was ongoing and had not yet been fully carried out under existing law at the time statute was amended, and thus the application was not truly retrospective).

On remand, the trial court shall recalculate the child support obligations that accrued before January 1, 2008, without applying the amended version of section 14–10–115(6)(b)(I).

■ We reject wife's further contention that the amended statute does not apply to husband's after-born children in any case because it would apply only to her, the parent moving to modify. Section 14–10–115(6)(b)(I) now provides in relevant part:

At the time of the initial establishment of a child support order, or in any proceeding to modify a support order, if a parent is also legally responsible for the support of other children for whom the parents do not share joint legal responsibility, an adjustment shall be made revising the parent's income prior to calculating the basic child support obligation for the children who are the subject of the support order if the children are living in the home of the parent seeking the adjustment or if the children are living out of the home, and the parent seeking the adjustment provides documented proof of money payments of support of those children.

We do not interpret this language as applying only to the parent who filed a motion to modify child support. Rather, the statute

provides that the adjustment shall be made to the income of the parent who is also legally responsible for other children. The subsequent language referring to "the parent seeking the adjustment" refers to the parent seeking the adjustment to his or her income, and not solely to a parent, like wife here, who files a motion to modify child support.

## B. Husband's Income

Wife further contends that the trial court erred when calculating husband's income for child support purposes without including his employer's contributions to his 401(k) savings plan, stock option plan, and insurance plans, and the stipend husband receives to defray his own insurance costs. We disagree.

Child support obligations are determined by applying the statutory guidelines in section 14–10–115(7), C.R.S.2010, to the parents' combined gross incomes. *See* § 14–10–115(1)(b)(I), (7)(a)(I), C.R.S.2010; *In re Marriage of Nimmo,* 891 P.2d 1002, 1005 (Colo. 1995). Gross income means the actual gross income of a parent from any source. § 14–10–115(3)(c), (5)(a)(I), C.R.S.2010; *In re Marriage of Mugge,* 66 P.3d 207, 210 (Colo. App.2003).

### 1. 401(k) Contributions

■ Prior to actual distribution, employer contributions to a spouse's retirement account or pension plan do not constitute gross income for child support purposes. *Mugge,* 66 P.3d at 211. This was the holding in *Mugge* even though the spouse in that case had already retired at the time of dissolution and had an opportunity to cash out the contributions, but instead elected to roll them over into another pension plan. *See id.* at 212. The division reasoned that the pension and retirement benefits, which are expressly included as income in section 14–10–115(5)(a)(I)(H), C.R.S.2010, include only such benefits that have actually been paid out and not those that are undistributed at the time of the hearing. *See Mugge,* 66 P.3d at 211.

■ Here, husband testified that his employer made contributions to his 401(k) account but that he could not receive those funds prior to retirement without paying a

penalty. We are persuaded by the reasoning of the division in *Mugge* that such unrealized employer contributions are not income for child support purposes. Accordingly, the trial court did not abuse its discretion by excluding them from husband's income.

We are not persuaded otherwise by *In re Marriage of Tessmer,* 903 P.2d 1194 (Colo. App.1995), on which wife relies. *Tessmer* held that interest and dividends credited to a retired spouse's account, which the spouse had not yet withdrawn, were income for child support purposes. *See id.* at 1196. Interest and dividends are expressly included in gross income under section 14–10–115(5)(a)(I)(F) and (K), C.R.S.2010, however, and these assets differ from pension contributions in how they are accumulated and paid. *See Mugge,* 66 P.3d at 212–13 (similarly distinguishing *Tessmer* and holding that undistributed employer-funded retirement benefits that spouse elected not to receive were not income for child support purposes).

### 2. Stock Options

■ Similarly, a spouse's stock options from an employer are included in gross income for child support purposes only to the extent that the options have already been exercised at the time child support is determined. *See In re Marriage of Campbell,* 905 P.2d 19, 20–21 (Colo.App.1995) (holding that amount received from stock options that were exercised is income for child support purposes, but that the potential income from the future exercise of other stock options is not). Accordingly, we also discern no abuse of discretion by the trial court in excluding from husband's income his employer's contributions to his stock option plan.

### 3. Employer Contributions to Husband's Insurance Plans

■ Like the employer contributions to husband's retirement plan, which we conclude were properly excluded from husband's income under *Mugge,* 66 P.3d at 211, employer contributions on an employee's behalf to insurance plans are not income for child support purposes. *See Jones v. Jones,* 920 So.2d 563, 564–65 (Ala.Civ.App.2005) (reversing trial court's child support calculation that included parent's employer's contribution to health insurance as income to the parent); *Caskey v. Caskey,* 698 S.E.2d 712, 718 (N.C.Ct.App.2010) ("We hold that contributions made by an employer to an employee's . . . insurance premiums, may not be included as income for the purposes of the employee's child support obligations unless the trial court, after making the relevant findings, determines that the employer's contributions immediately support the employee in a way that is akin to income."); *cf.* 26 C.F.R. § 1.106–1 (2010) ("The gross income of an employee does not include contributions which his employer makes to an accident or health plan for compensation (through insurance or otherwise) to the employee for personal injuries or sickness incurred by him, his spouse, or his dependents . . . .").

Similar to the retirement plan contributions, husband did not have the option to take these contributions as wages and use them for general living expenses. *See Mugge,* 66 P.3d at 211 ("[E]mployers determined the amounts of their pension plan contributions and the employees did not have the option of directly receiving the amounts as wages."); *see also Jones,* 920 So.2d at 565 ("[I]f it is a payment that [a parent] has the power either to accept or to direct as he or she sees fit—i.e., if the [parent] has the power to redirect the payment so as to cause it to be included in the [parent's] paycheck—then such amount must be included as part of that [parent's] income for the purposes of calculating the [parent's] child-support obligation." (quoting *Jones v. Jones,* 883 So.2d 207, 211–12 (Ala.Civ.App.2003))); *Caskey,* 698 S.E.2d at 718 ("[I]f the employee could elect to receive cash instead of retirement or life insurance contributions from the employer, those employer contributions might properly be considered as income for child support purposes.").

Accordingly, we conclude that the trial court did not err by excluding the employer's contributions to husband's insurance plans from his income for child support purposes.

### 4. Husband's Stipend

Pursuant to section 14–10–115(5)(a)(I)(X), C.R.S.2010, expense reimbursements re-

ceived by a parent in the course of employment are included in gross income for child support purposes if such payments are significant and reduce personal living expenses. *See In re Marriage of Long,* 921 P.2d 67, 69 (Colo.App.1996); *see also In re Marriage of Stress,* 939 P.2d 500, 502 (Colo.App.1997) (upholding inclusion in parent's income of monies paid to compensate for the cost of living in a foreign country because such monies serve the same function as any other compensation, which is to fund the parent's lifestyle and financial obligations). In *Long,* the reimbursement at issue was free military base housing, which the trial court determined relieved the husband of his primary living expenses of housing and utilities and increased his income by twenty percent. *See* 921 P.2d at 69.

■ Here, the trial court distinguished *Long* and found that the stipend husband's employer paid to defray part of husband's health insurance costs did not meet the standard of being significant and reducing living expenses, and therefore would not be included in husband's income for child support purposes. Husband testified, and wife did not dispute, that he received $51.34 in his bimonthly paycheck as a stipend that was applied directly to defray part of his monthly health insurance expense. Based on this record, we perceive no abuse of the court's discretion in finding as it did, and, thus, in deciding not to include the small stipend husband received in his income for child support purposes.

### C. The Child's Income

Wife also contends that the trial court erred by including the child's income in the child support calculation. Again, we disagree.

■ The financial resources of the child are a factor that a trial court must consider when determining child support. *See* § 14-10-115(2)(b)(I), C.R.S.2010. If the court finds that a child's income diminishes the child's basic needs, the court may reduce the basic child support obligation by an amount representing the reduction in need. *In re Marriage of Anthony–Guillar,* 207 P.3d 934, 943 (Colo.App.2009); *see also* § 14-

10-115(11)(b), C.R.S.2010 ("Any additional factors that actually diminish the basic needs of the child may be considered for deductions from the basic child support obligation."). The extent to which a child's income is used to defray the basic support obligation depends upon the totality of circumstances in a particular case and is within the trial court's discretion. *Anthony–Guillar,* 207 P.3d at 943; *In re Marriage of Cropper,* 895 P.2d 1158, 1160 (Colo.App.1995). Thus, an appellate court reviews the trial court's decision, whether and to what extent to consider a child's income when calculating child support, for abuse of discretion. *See In re Marriage of Barrett,* 797 P.2d 848, 850 (Colo.App.1990).

■ Here, the trial court included the child's employment income in the child support calculation because the child had a long-term work history and his income was used for his living expenses. The court's findings are supported by the record. The parties testified that the child, who was eighteen and attending college, had worked part time at the same job for the last two years earning $400 a month, which he used for discretionary expenses and college savings. Accordingly, we perceive no abuse of discretion by the trial court, and we decline to disturb its inclusion of the child's income in the support calculation.

### II. Contempt

Wife further contends that the trial court erred by not finding husband in contempt for violating a prior court order. We disagree.

Initially, we observe that husband does not contend that the trial court lacked jurisdiction to enforce the Georgia court's order. On our own, however, we note that, because the parties' dissolution action originated in Colorado, section 14-11-101(2), C.R.S.2010, authorizes the trial court to enforce the Georgia order. Additionally, as to the parenting time and custody provisions of the Georgia order, wife filed a motion for the Colorado court to reassume jurisdiction pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act, section 14-13-101 to -403, C.R.S.2010. Accordingly, the trial court had

proper jurisdiction to enforce all provisions of the Georgia order.

■ The decision whether to find a party in contempt is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *See In re Marriage of Lodeski*, 107 P.3d 1097, 1102 (Colo.App.2004).

■ A court may find a party in contempt for refusing to comply with a court order. *See* C.R.C.P. 107(a)(1); *Lodeski*, 107 P.3d at 1102. In order to be held in contempt for this reason, however, a party must have refused to do exactly what the court order required. *People v. Lockhart*, 699 P.2d 1332, 1336 (Colo.1985). "A party may not be held in contempt for refusal to do that which he is unable to do or that which the court has not ordered him to do." *Id.*

■ Here, wife argued that husband violated an order entered by a Georgia court in 1991 (the 1991 order) that required him to provide wife's attorney with his current annual income, to pay his proportionate share of the child's uninsured medical expenses within fifteen days, and to confer with wife on important matters relating to the child. At the hearing the parties presented sharply conflicting evidence about what the 1991 order required of husband and what husband actually did. Because the trial court's findings, and its resultant decision that husband was not in contempt, are supported by the record, however, we do not disturb that decision. *See In re Marriage of Herrera*, 772 P.2d 676, 679 (Colo.App.1989) ("[T]he trial court's contempt finding, though based on conflicting evidence, is supported by the record and will not be disturbed on review.").

Specifically, there is evidence in the record that (1) without requesting financial information from husband, wife agreed in 1993 to accept fifty percent as husband's contribution to the child's extraordinary medical expenses; (2) although husband was not always able to pay these expenses within fifteen days, he had paid his share of outstanding expenses by the time of the hearing; (3) husband mistakenly gave wife incorrect insurance information for the child but promptly corrected the error; and (4) husband had

arranged parenting time directly with the child, but the child was eighteen and living in a college dormitory at the time of the hearing. We conclude that the totality of these circumstances, as reflected in the lengthy record, support the trial court's findings that husband's actions in relation to the 1991 order did not warrant a finding of contempt.

Because we agree with the trial court that the nature of husband's actions did not warrant a contempt finding, we need not address wife's further contention that the court erred by dismissing her remedial contempt allegations in particular because she did not adequately describe the sanctions and remedies sought.

### III. Attorney Fees

Last, wife contends that the trial court abused its discretion by denying her request for attorney fees as a sanction under C.R.C.P. 107(d) and 16.2(j), and under section 14–10–119, C.R.S.2010. We disagree.

Because we affirm the trial court's finding of no contempt, we also affirm the denial of attorney fees under C.R.C.P. 107(d). *See Eatchel v. Lanphere*, 170 Colo. 545, 549–50, 463 P.2d 457, 460 (1970) ("Since the judgment of contempt cannot be sustained, and since by virtue of Rule 107(d) an order for attorney's fees is an adjunct of a finding of guilty of contempt, the award of attorney's fees by the trial court must also be set aside.").

■ Sanctions for nondisclosure under C.R.C.P. 16.2(j) are discretionary and the trial court is not required to impose sanctions for a violation of pretrial procedures. *See Nagy v. Dist. Court*, 762 P.2d 158, 160–61 (Colo.1988) (construing former C.R.C.P. 121 § 1–18(1)(d), which, like C.R.C.P. 16.2(j), used the permissive "may" regarding imposition of sanctions); *In re Marriage of Emerson*, 77 P.3d 923, 927 (Colo.App.2003) (trial court has broad discretion whether to award sanctions for discovery violations under C.R.C.P. 37).

■ First, we reject wife's contention that the trial court failed to sufficiently address her request for sanctions. The record

reflects that both parties previously moved for and were granted attorney fees relating to pretrial and discovery matters. Wife did not assert a second request for sanctions relating to nondisclosure in either her motion to modify child support or her motion for contempt. Nor did she file a separate motion seeking attorney fees for that reason. In closing argument, wife's attorney referred to husband's failure to disclose information only in connection with wife's contempt argument, and fees were requested only relating to contempt and because of disparity of income between the parties, and not under C.R.C.P. 16.2(j). Accordingly, we conclude the trial court's denial of fees sufficiently addressed wife's attorney fee request as it was presented at the hearing.

 The decision whether to award attorney fees under section 14–10–119 is also discretionary with the trial court and will not be disturbed on appeal absent an abuse of discretion. *See In re Marriage of Yates,* 148 P.3d 304, 318 (Colo.App.2006). Section 14–10–119 empowers trial courts to equitably apportion costs and fees between parties based on relative ability to pay, and courts have great latitude under the statute to craft attorney fee orders appropriate to the circumstances in a given case. *In re Marriage of Gutfreund,* 148 P.3d 136, 141 (Colo.2006).

We reject wife's argument, relying on *Nimmo,* 891 P.2d 1002, that the trial court abused its discretion by finding that all of wife's living expenses were paid by way of regular gifts from her current husband. As wife acknowledges, the court did not include her current husband's income as part of her income when determining child support. Thus, *Nimmo,* which holds that a third party's payment of household expenses may not be considered as income for child support, but that the amount of any regular financial gifts to a parent, whatever their source, may be discovered and considered, is not controlling. *See* 891 P.2d at 1007–08.

Wife's overall economic circumstances, and not solely her income, are relevant in the context of an attorney fee award under section 14–10–119. *See In re Marriage of Ald-*

*rich,* 945 P.2d 1370, 1377 (Colo.1997) (describing section 14–10–119 award as based on the relative economic circumstances of the parties); *see also Gutfreund,* 148 P.3d at 141. Thus, regardless of whether the amounts wife's current husband contributed to her living expenses were properly termed "gifts," the trial court did not abuse its discretion in considering those contributions when evaluating wife's overall economic circumstances and ability to pay attorney fees. *Cf. In re Marriage of Bowles,* 916 P.2d 615, 618 (Colo. App.1995) (holding that court cannot include new spouse's resources in the income calculation for purposes of determining maintenance but that such resources may be considered generally as a factor in determining whether changed circumstances exist to warrant reduction in maintenance).

Although wife requests appellate attorney fees, she provides no legal basis for the request. Thus, we deny it. *See* C.A.R. 39.5; *In re Marriage of Dunkle,* 194 P.3d 462, 467 (Colo.App.2008).

Because we do not view wife's appeal as frivolous under C.A.R. 38(d) and section 13–17–102(4), C.R.S.2010, we also deny husband's request for appellate fees. *See Mission Denver Co. v. Pierson,* 674 P.2d 363, 365 (Colo.1984) ("Standards for determining whether an appeal is frivolous should be directed toward penalizing egregious conduct without deterring a lawyer from vigorously asserting his client's rights.").

The order is reversed as to the calculation of the child support obligations accruing before January 1, 2008 and the case is remanded to recalculate those obligations as provided herein. The order is affirmed in all other respects.

Judge MILLER and Judge NIETO * concur.

---

* Sitting by assignment of the Chief Justice under

provisions of Colo. Const. art. VI, § 5(3), and

