24CA1439 Parental Resp Conc TMW 07-03-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1439
Montrose County District Court No. 22DR30023
Honorable D. Cory Jackson, Judge

---

In re the Parental Responsibilities Concerning TMW, a Child,

and Concerning Leon A. Leiba,

Appellant,

and

Morgan Irene McCullah,

Appellee,

and

Montrose County Department of Human Services,

Intervenor-Appellee.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE KUHN
Welling and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 3, 2025

---

The Harris Law Firm PLLP, Katherine O. Ellis, Denver, Colorado, for Appellant

No Appearance for Appellee

Julie R. Andress, Interim County Attorney, Montrose, Colorado for
Intervenor-Appellee

¶ 1     Leon A. Leiba (father) appeals the portion of the district court's permanent orders judgment that relates to child support. We affirm in part, reverse in part, and remand the case for further proceedings.

## I.     Background

¶ 2     Father and Morgan Irene McCullah (mother) have a son (the child), born November 26, 2020. Eighteen months after the child was born, father filed a petition for allocation of parental responsibilities (APR). After a permanent orders hearing, the district court issued a final order concerning the parties' incomes. The court found that mother had earned $0 per month until November 2022 because she was caring for the child, who was less than twenty-four months old. After November 2022, the court imputed full-time minimum wage ($2,177 per month) income to mother, and $1,820 monthly income after January 2023. The court found that father received a salary of $2,500 per month. In addition, the court found that he had received additional funds amounting to $241,991 from his employer, paternal grandfather's business. The court concluded that these additional funds represented another $3,666 per month in income. Based on these

amounts, the court determined father's gross monthly income for child support purposes to be $6,166.

¶ 3    A few weeks later, the court issued a support order requiring father to pay $2,332 in retroactive child support, $175 monthly in child support going forward, and $5,401 to Montrose County Child Support Services (CSS) for Temporary Assistance for Needy Families (TANF) benefits. Father objected to the support order and CSS, who had intervened, requested other amendments to the support order.

¶ 4    The court modified its support order, crediting father for work-related childcare expenses, and crediting both mother and father for caring for children from previous relationships. The court also imputed a minimum wage income to mother from August to November 2022 and issued a new support order. The revised order increased the retroactive child support to $3,145, decreased the monthly child support going forward to $142, and decreased the TANF judgment to $663.

¶ 5    Father, in two separate motions under C.R.C.P. 59(d) and C.R.C.P. 60, objected to the new support order. First, he asserted he did not owe the reduced $633 TANF balance because he claimed to have been paying support to mother directly during the time that

she received benefits.  Father also objected to paying $142 per month in child support because, he alleged, the court miscalculated his and mother's income.

¶ 6     The court declined to amend the support order based on "[mother's] income or [the] TANF judgment."

## II.     Analysis

¶ 7     Father contends that the court erred by (1) miscalculating the parents' income for the purposes of child support; (2) ordering him to pay retroactive child support; and (3) ordering him to repay mother's public assistance debt.[1]  We first address each parent's income before addressing the remaining issues in turn.

### A.     Parents' Income Determinations

¶ 8     Father contends that the court miscalculated both mother's income and his own.  We perceive no basis for reversal.

---

[1] Father separately raises the calculation of each parent's income, but because these issues are so substantively similar, we address them together.  Conversely, he raises his second and third issues together, but we address them separately because they require separate analyses.

## 1.   Standard of Review and Applicable Law

¶ 9    "We review child support orders for [an] abuse of discretion because the issue of the parents' financial resources is factual in nature." *In re Marriage of Davis*, 252 P.3d 530, 533 (Colo. App. 2011). In doing so, we must accept the court's factual findings relative to child support unless they are clearly erroneous and not supported by the record. *See In re Marriage of Connerton*, 260 P.3d 62, 66 (Colo. App. 2010). We review de novo, however, whether the court applied the correct legal standard when determining child support. *Davis*, 252 P.3d at 533; *see also In re Marriage of Paige*, 2012 COA 83, ¶ 9 ("Interpretation of the child support statutes is a question of law that we review de novo.").

¶ 10   The basic child support obligation is determined by applying the schedule in section 14-10-115(7)(b), C.R.S. 2024, to the parents' combined gross income. *Davis*, 252 P.3d at 534. The basic obligation is then divided in proportion to the parents' incomes. § 14-10-115(7)(a)(I).

¶ 11   For child support purposes, "income" means the actual gross income of a parent from any source. § 14-10-115(5)(a)(I); *Davis*, 252 P.3d at 534. The statute defines income broadly to include

sources beyond those specifically listed. *See In re A.M.D.*, 78 P.3d 741, 743-44 (Colo. 2003). And a source of income not listed in the statute may be included in a parent's gross income for child support purposes if it is available to the parent for them to pay their expenses or increase their standard of living. *See id.* at 746 (the principal of a monetary inheritance is income if the recipient uses it as a source of income to meet existing living expenses or increase their standard of living).

¶ 12　　In contrast to income, loans are made with the expectation that they will be repaid. *See Black's Law Dictionary* 1120 (12th ed. 2024) (defining a "loan" as "[a] thing lent for the borrower's temporary use; esp., a sum of money lent at interest"). Therefore, "it would be misleading to consider loan proceeds as a financial resource unless the court also considers the associated liability, in which case (and in virtually every case) the net asset value is zero." *In re Marriage of Morton*, 2016 COA 1, ¶ 18.

### 2.　Mother's Income

¶ 13　　Father argues that the court erred by imputing mother's income, from January through June of 2023, to be $1,820 per month (based on a thirty-two-hour workweek for fifty weeks per

year) instead of $2,366 per month (based on a forty-hour workweek for fifty-two weeks per year). Father alleges that the record supported the latter income.

¶ 14 The court may impute income to a parent who is voluntarily underemployed. § 14-10-115(5)(b)(I), (b.5)(I)-(II). "Ability to pay [child support] is generally calibrated on the basis of actual gross income, unless the facts of the case indicate that the parent is voluntarily unemployed or underemployed." *People v. Martinez*, 70 P.3d 474, 478 (Colo. 2003). What the parent can reasonably earn is not defined in the statute; instead, it is based on an amount that can be earned from a full-time job commensurate with the parent's demonstrated earning ability. *People in Interest of A.R.D.*, 43 P.3d 632, 636-37 (Colo. App. 2001).

¶ 15 The court's determination of mother's working hours is supported by the record. Mother's employer testified that, from January to the end of June 2023, forty hours of work at minimum wage were available to mother, but that mother sometimes worked as few as thirty-two hours per week. Nevertheless, the employer testified that anywhere between thirty-two and forty hours was considered full time. Mother's testimony confirmed this wage and

varying schedule. Mother also testified that she missed many hours of work in May 2023. And the CSS technician opined that the court should impute mother's employment to be less than forty hours per week to accommodate for the times mother could not work.

¶ 16   The record also supports the court's ultimate determination of mother's income. Father argues that, when the court imputed a minimum wage income to mother for thirty-two hours per week for fifty weeks per year, the court applied a statute not yet in effect. *See* § 14-10-115(5)(b.5)(II)(N). But the court's order did not cite this statute. Moreover, the court's determination was within its discretion based on the evidence in the record. Mother's employer testified that her actual income as reported to the Department of Labor was correct. The CSS technician reported that mother's actual monthly income during this time, according to the Department of Labor report, was less than $1,820 (or thirty-two hours per week for fifty weeks per year at minimum wage).

¶ 17   Because the record supports the court's determination of mother's income, we will not disturb it. *Connerton*, 260 P.3d at 66.

### 3.   Father's Income

¶ 18    Father also contends that the district court erred when it determined that the funds father received from paternal grandfather's business — which father argued were a loan — were supplemental income.  The district court did not err.

### a.   Additional Facts

¶ 19    Father, who earned a salary of $2,500 per month, testified that he had a budget shortfall of $7,000 each month.  In order to cover this shortfall, father borrowed money, "as needed," from his employer, paternal grandfather's business.  Father received access to up to $300,000 through his employer, beginning in January 2018.  In father's sworn financial statement, at the time of the permanent orders hearing, he indicated that he had spent $241,991.  The court averaged this amount over the life of the "loan" (sixty-six months from January 2018 until the hearing in June 2023 ) and concluded that father accessed $3,666 monthly from this borrowed money.  The court then added father's salary to that amount, finding that his monthly income should be considered $6,166.

## b. The Trial Court Did Not Err by Determining that the Money Father Received from His Employer was Income

¶ 20    The court found that the borrowed money was "income to [father] for the purposes of child support" and not a loan. These findings are supported by the record. First, father used the money to pay his expenses or increase his standard of living. He testified that he used it to "pay for food, clothes, [and] childcare," and to pay his child support obligation in a different case.[2]

¶ 21    Second, father had little, if any, associated liability with regard to the "loan." *Morton*, ¶ 18. The loan's repayment terms, from 2018 until 2023, were simply that father would repay the full amount when he "was able." In January of 2023, father signed an agreement indicating he would repay the money in $700 monthly increments for "300 months," though father also testified that there was no timeframe for repayment. And this agreement, too, does not make father responsible for repayment of $300,000. Full compliance by father to the terms would result in a repayment of

---

[2] In that case, the court also found that additional sums he received from paternal grandfather's business was income rather than a loan. *In re Parental Responsibilities Concerning Ali.L.L.,* slip op. at ¶¶ 13-17 (Colo. App. No. 22CA1008, May 25, 2003) (not published pursuant to C.A.R. 35(e)).

$210,000 and not the full amount "loaned." And father testified he could use money from the "loan" in order to make repayments. Moreover, interest was not charged, and there was no evidence that security was given. Accordingly, we perceive no error in the court's determination that these funds were supplemental income and not a loan.

## B.    Retroactive Child Support

¶ 22     Father asserts that the district court erred by requiring him to pay retroactive child support when, he alleges, "neither the permanent orders nor the support order include[d] any explanation as to how that amount was calculated." We are not persuaded.

### 1.    Standard of Review

¶ 23     We review child support orders for an abuse of discretion. *In re Marriage of Garrett*, 2018 COA 154, ¶ 18. However, we review de novo the district court's application of legal standards and legal conclusions. *Id.* A "district court must make sufficiently explicit findings of fact to give the appellate court a clear understanding of the basis of its order." *In re Marriage of Gibbs*, 2019 COA 104, ¶ 9.

## 2. The Order is Sufficiently Detailed to Enable Appellate Review

¶ 24    Father contends that the court's orders lack sufficient detail for us to review how the court reached the amount of retroactive child support and so its order must be reversed. We disagree.

¶ 25    The amended support order indicates that the court calculated the amount of the judgment as "$8,418 minus direct payments totaling $5,257.96, and minus the amount of $17.32 [that mother] owes [father] for 8/2022, leaving a Retro[active] Judgment balance of $3,142.72." The order then reflects that the court determined father owes support for each month between February 1, 2021, and August 31, 2023, in which mother did not receive TANF benefits. *Cf. Edis v. Edis*, 742 P.2d 954, 955 (Colo. App. 1987) (mother's assignment to a department of social services of support rights against father for period in which mother received public assistance was unconditional and she had no entitlement to any support payments during that period, barring reassignment back to mother). The court identified these months as February 2021, April through July 2021, September 2021 through January 2022, and May through August 2023.

¶ 26    The record contains a child support worksheet showing that for each month between November 2020 and May 2022, father owed $785 per month in child support.  And for January 2023 going forward, another child support worksheet reflected a monthly amount due of $140.30.  The parties also don't dispute that father made some direct child support payments to mother.

¶ 27    Pulling all of these amounts together results in the following:

| Month | Worksheet Amount | Father's Direct Payments |
|---|---|---|
| 2/21 | $785.00 | |
| 4/21 | $785.00 | |
| 5/21 | $785.00 | $500 |
| 6/21 | $785.00 | $700 |
| 7/21 | $785.00 | $150 |
| 9/21 | $785.00 | $650 |
| 10/21 | $785.00 | $700 |
| 11/21 | $785.00 | $1,283.98 |
| 12/21 | $785.00 | $623.98 |
| 1/22 | $785.00 | $650 |
| 5/23 | $140.30 | |
| 6/23 | $140.30 | |
| 7/23 | $140.30 | |

| Month | Worksheet Amount | Father's Direct Payments |
|---|---|---|
| 8/23 | $140.30 | |
| | $8,411.20 | $5,257.96 |

¶ 28    Finally, the amended support order[3] indicates that the court calculated the judgment amount by subtracting $17.32 that mother owed father for August 2022. This amount reflects another child support worksheet that was filed with the proposed order.

¶ 29    This results in a judgment calculation of $8,411.20 minus $5,257.96 and $17.32, for a total of $3,135.92.[4] Thus, we are able to discern the basis for the retroactive support award from the

---

[3] These calculations are materially the same for the permanent orders.

[4] It is true that the there is a mathematical error in the amended support worksheet, which is not raised by the parties. The court's permanent orders originally calculated the amount owed as $142 per month from January 2023 forward. This amount was not updated in the amended support order. Thus, the decrease from $142 to $140.30 for the period from May to August 2023 results in an amended order total that is $6.80 more than it should be. This explains the difference in the calculations above and the court's total. Even if we were to review this discrepancy, we would conclude that it is harmless given the de minimis amount. *See* C.R.C.P. 61 (noting that we must disregard any error or defect in the proceedings not affecting the parties' substantial rights).

record and from the district court's orders. Accordingly, father's claim that the orders contain insufficient detail for our review fails.[5]

## C. Public Assistance

¶ 30 Father claims that the district court's order requiring him to repay mother's public assistance debt was erroneous because it was not based on sufficient evidence in the record. We agree.

¶ 31 Section 14-14-104, C.R.S. 2024, applies when a public agency has provided support for a child. That statute provides that when any payment of public assistance has been made to or for the benefit of the dependent child, a debt is created that is recoverable from the parent or parents who are responsible for support of the dependent child. § 14-14-104(1); *see In re Parental Responsibilities Concerning H.Z.G.*, 77 P.3d 848, 852 (Colo. App. 2003).

---

[5] Father also obliquely mentions that the amended support order "broke down each judgment into totals owed for certain timeframes, but there was no evidence or testimony as to those amounts presented at trial." To the extent father intended to challenge the sufficiency of the evidence supporting the orders, we reject that challenge. The court's calculations are supported by the child support worksheets from the CSS technician who testified at the hearing. In addition, with the exception of two months, the court's calculations match father's calculations in his submitted child support worksheets.

¶ 32    The court's decision regarding father's public assistance debt was not based on competent record evidence. *See Connerton*, 260 P.3d at 66. Mother applied for public assistance shortly after the child's birth and an exhibit indicates that she received $10,284 in public assistance before the permanent orders hearing. But this exhibit does not appear to have been offered as a "computer printout obtained from the state department of human services of the record of payments of assistance" under section 14-14-104(9), which would have been prima facie evidence of the debt. Nor does the record indicate that the exhibit was admitted at the permanent orders hearing.

¶ 33    Moreover, there was no discussion of a public assistance debt during the permanent orders hearing, or in the court's permanent orders. *See Rozzi*, 190 P.3d at 822 (Colo. App. 2008).

¶ 34    Because the record does not contain support for the TANF judgment — and, regardless, the court offered no explicit findings regarding its calculation of this public assistance debt — we reverse that portion of the court's support orders.

## III. Disposition

¶ 35　　The district court's findings regarding both parents' incomes are affirmed. The retroactive child support award is affirmed. Because insufficient evidence and findings support the TANF debt determination, that portion of the court's support order is reversed. The case is remanded to the district court for additional proceedings and findings as appropriate.

JUDGE WELLING and JUDGE SCHUTZ concur.