25CA0235 Parental Resp Conc ARR 01-29-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0235
City and County of Denver District Court No. 24DR30354
Honorable Marie Avery Moses, Judge

---

In re the Parental Responsibilities Concerning A.R.R., a Child,

and Concerning Sean Alan Roberts,

Appellant,

and

Alexandra Lauren Lewis,

Appellee.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE SCHUTZ
Freyre and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 29, 2026

---

Holland & Hart LLP, Diane E. Wozniak, Christopher M. Jackson, Denver, Colorado, for Appellant

Colorado Family Law Project, Maha Kamal, Denver, Colorado, for Appellee

¶ 1    Petitioner, Sean Alan Roberts (father) appeals the district court's child support award regarding, A.R.R., the daughter he shares with respondent, Alexandra Lauren Lewis (mother). We affirm the district court's judgment and remand for consideration of mother's request for an award of her appellate attorney fees and costs.

## I.    Background and Procedural History

¶ 2    Mother and father were in a committed relationship in 2020, when A.R.R. was born. Their romantic relationship ended shortly after A.R.R.'s birth. Despite the relationship ending on poor terms, they were initially able to coparent.

¶ 3    Mother lived in Denver and worked as a journalist. Father primarily resided in Texas but also had a residence in Colorado. He practiced law as a trial attorney and was a partner at a law firm. Father received income distributions from the firm. The distributions were paid to Sean A. Roberts, P.C. (the P.C.), a closely held entity that father wholly owned. Father also used the P.C. as the parent entity for various real estate investments and ventures, which themselves were housed within separate entities. During the

relevant time period, these real estate ventures experienced a net operating loss.

¶ 4    Mother worked with father to accommodate his requests to see A.R.R. on relatively short notice.  They also initially agreed on decision-making, including A.R.R.'s daycare provider and extracurricular activities, as well as mother's use of a live-in nanny to assist with childcare.  Father contributed financially to A.R.R.'s school and childcare expenses.

¶ 5    Mother married and had another child in 2024.  She had primary physical custody of both children.  Father had a teenage child from a previous relationship, with whom he had parenting time.

¶ 6    In early 2024, mother and father's coparenting relationship broke down after they could not agree on a parenting time schedule. In March, father petitioned the court for an allocation of parental responsibilities, seeking a defined parenting time schedule, joint decision-making, and a child support determination.

¶ 7    The day before the temporary orders hearing, mother's counsel notified the court that the parties could not agree on whether father had provided adequate financial disclosures under C.R.C.P.

16.2(e)(2). Specifically, father contended that some of the documents mother had requested were immaterial to the child support calculation because the parties' gross income "significantly exceed[ed] the maximum joint income" under the child support guidelines outlined in section 14-10-115, C.R.S. 2025. The court disagreed, ordered additional disclosures, and granted mother's request for attorney fees after finding that father lacked justification for failing to disclose the disputed information and documents.

¶ 8     In May, the district court entered temporary orders after a hearing. In the absence of complete financial disclosures from father, the court imputed father's income at $46,000 per month and ordered him to pay temporary child support in accordance with the child support guidelines.

¶ 9     Father's resistance to disclosing his complete financial records continued, and mother filed a contempt motion. The parties later stipulated to dismissal of the motion after father agreed to provide self-employment affidavits and pay mother's legal fees related to the contempt proceedings. Shortly thereafter, father submitted affidavits of self-employment for the P.C.'s entities that included information about his limited liability companies and rental

properties. The associated financial statements father provided were not audited.

¶ 10 The permanent orders hearing primarily focused on child support, and father's monthly income was central to the dispute. More specifically, the parties disagreed whether father's gross income from his law practice should be reduced by personal expenses father ran through the P.C., and by the net operating losses that flowed through the P.C., including those from father's various investment properties.

¶ 11 Father noted that his law practice represented only a portion of the business activities included under the P.C.'s umbrella. He reasoned that the expenses related to his investment properties must be deducted from the revenue generated by his law practice. If this argument were accepted, father's overall income — and hence his child support obligation — would be substantially reduced because father's numerous real estate ventures reported operating losses that significantly reduced the income from his law practice.

¶ 12 Mother argued that the court should only consider the P.C.'s ordinary and necessary business expenses related to father's legal

practice. Furthermore, she asked the court to exclude personal expenses that father was paying through the P.C.

¶ 13    In a thorough written order, the court made the following findings:

(1)    Father had not filed his 2023 income tax returns for the law firm or the P.C., nor had he provided financial statements for the P.C.

(2)    The profit and loss statement father provided did not "appear to be reliably accurate," was unaudited, and conflicted with other evidence.

(3)    Father's base annual salary from his law practice was $180,000, which was payable to the P.C. In addition to that base salary, over the preceding three years, the law firm paid father (through the P.C.) an average annual dividend of $1,685,676.

(4)    Father used the P.C. "to minimize his tax liability associated with his distributions from [the law firm]" and as an "estate planning strategy." If all of the expenses father claimed through the P.C. were credited, his annual

5

income would be reduced from approximately $1.86 million to $335,000.

(5)     A substantial portion of the expenses father funneled through the P.C. were unrelated to his legal practice. Instead, the expenses related to personal matters, such as a chef, valet service, home repairs, life insurance, charitable contributions, and political lobbying. Substantial expenses were also attributed to his various investment properties.

(6)     The reasonable expenses related to father's law practice totaled $310,685, resulting in an income of $129,583 per month.

(7)     Mother's income was $20,833 per month.

(8)     After making appropriate adjustments, father's monthly child support obligation was $4,900.  The district court also determined that "father's financial circumstances are vastly superior to mother's and there is a basis for an award of attorney fees and costs to mother pursuant to [section 14-10-119, C.R.S. 2025]."

¶ 14  On appeal, father argues that the district court erred by improperly calculating his gross income, and hence his child support obligation. Mother responds that the district court correctly calculated father's income and his resulting child support obligation and urges us to affirm the order. Mother also requests an award of her costs and attorney fees incurred on appeal.

## II.  The Child Support Calculation

### A.  Standard of Review and Applicable Law

¶ 15  We generally review child support orders for an abuse of discretion because determining the parents' financial resources is typically a factually intense inquiry. *In re Marriage of Davis*, 252 P.3d 530, 533 (Colo. App. 2011). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair. *In re Marriage of Gromicko*, 2017 CO 1, ¶ 18. However, we review de novo whether the district court applied the correct legal standards in resolving the parties' dispute. *Davis*, 252 P.3d at 533.

¶ 16  To determine a parent's child support obligation, the court must first determine each party's gross income. *In re Marriage of Tooker*, 2019 COA 83, ¶ 13. Gross income is statutorily defined to include "income from any source," subject to certain exceptions.

§ 14-10-115(5)(a)(I)-(II).  For income from self-employment or closely held businesses, "'gross income' equals gross receipts minus ordinary and necessary expenses."  § 14-10-115(5)(a)(III)(A).  As relevant, "'[o]rdinary and necessary expenses' does not include . . . any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support."  § 14-10-115(5)(a)(III)(B).

¶ 17    In assessing the appropriateness of claimed business expenses, the court must consider "reasonable and necessary expenses associated with maintaining the structure and solvency of a business."  *In re Marriage of Crowley*, 663 P.2d 267, 269 (Colo. App. 1983).  Not all business expenses claimed by a self-employed parent are reasonable or necessary.  *Id.*  "[A]nd whether child support should and could have been paid before non-essential business expenses is within the [district] court's discretion."  *Id.*

¶ 18    The district court's exercise of discretion when considering a self-employed parent's claimed business income and expenses "is particularly important where the facts may indicate that a party is attempting to use an investment strategy to shield income to avoid a maintenance or child support obligation."  *In re Marriage of*

8

*Schaefer*, 2022 COA 112, ¶ 23. And because determining appropriate income and expenses is inherently fact intensive, we respect the district court's "discretionary authority to determine whether the investment strategy limited child support or maintenance obligations to an extent that was inequitable, unjust, or inappropriate." *Id.*

## B. Analysis

¶ 19 Applying these principles, we discern no abuse of discretion in the district court's calculation of father's monthly income. The court provided a detailed factual and legal basis to support the child support award. The district court's factual findings are supported by the record and consistent with section 14-10-115(5)(a)(III)(B); we therefore cannot disturb them. *In re Marriage of Garrett*, 2018 COA 154, ¶ 9.

¶ 20 By way of summary, the court found that father had, without justification, consistently resisted disclosing his relevant financial information during the course of this case. Indeed, father was required to pay mother's attorney fees on two separate occasions because of his failure to be forthcoming in his financial disclosures and his foot-dragging with respect to paying child support.

¶ 21    And when father finally provided more complete disclosures regarding his claimed income and expenses, it was in the form of an unaudited profit and loss statement. After hearing father's testimony and reviewing the evidence, the court found that the unaudited balance sheet was not reliably accurate. The court also found that the "real estate investments and expenses have been made by father for the purposes of decreasing his taxable income and . . . shirking his obligation to provide reasonable support for [A.R.R.]." The court determined that many of the expenses father claimed as purported business expenses were in fact personal expenses. Notwithstanding its concerns with the credibility of father's financial records, the district court nonetheless applied "an extremely liberal view of expenses" and credited all expenses that were "remotely related to the practice of law" to arrive at father's monthly income.

¶ 22    We discern no abuse of discretion or legal error in the court's factual findings related to its calculation of father's income. Recall that section 14-10-115(5)(a)(III)(B) excludes from the definition of ordinary and necessary expenses "any other business expenses determined by the court to be inappropriate for determining gross

10

income for purposes of calculating child support." Given the court's determination that the bulk of father's reported business expenses were claimed to shirk his child support obligation, we discern no error in its determination that they should not reduce his income for child support purposes.

¶ 23     The two cases father primarily relies on to support his assertion of error are clearly distinguishable. Father cites *In re Marriage of Glenn*, 60 P.3d 775, 778 (Colo. App. 2002), in which a division of this court reversed a child support order because the district court failed to adjust the father's income to reflect expenses related to an investment property. In *Glenn*, the father was awarded marital property as part of final orders. *Id.* at 776. When he sold the property, the mother sought to increase the father's child support based on the capital gains associated with the property. *Id.* On appeal, the division concluded that the court erred by failing to deduct ordinary and necessary expenses associated with the capital gains. *Id.* at 778. Thus, the court remanded for a recalculation of child support, taking into account those reasonable and necessary expenses. *Id.*

¶ 24    Here, in contrast, mother did not seek to include income from father's investment activities, while excluding ordinary expenses related thereto.  Rather, father sought to include the income and expenses generated by his real estate investments, which resulted in net losses, to reduce the amount of his income as a lawyer.  In light of the district court's factual findings regarding the nature and purpose of the disputed expenses, *Glenn* provides no support for father's arguments.

¶ 25    Father's reliance on *Schaefer* fairs no better.  He cites this case for the proposition that section 14-10-115(5)(a)(III)(B) "does not give the court carte blanche to create income 'where none, in fact, exists.'"  *Schaefer*, ¶ 23 (quoting *In re Marriage of Destein*, 111 Cal. Rptr. 2d 487, 495 (Ct. App. 2001)).  But father reads the statement out of context.  In *Schaefer*, the district court included in the mother's income unrealized capital gains.  *Id.* at ¶ 14.  The statement he quotes from *Schaefer* explained the division's conclusion that the child support statute does not permit the court to include as income unrealized capital gains because, in fact, unrealized capital gains are not income.  Moreover, father ignores that portion of *Schaefer* — particularly relevant here — recognizing

12

that district courts have "particularly important discretion" to determine reasonable expenses "where the facts may indicate that a party is attempting to use an investment strategy to shield income to avoid a maintenance or child support obligation." *Id.* at ¶ 23.

¶ 26 Here, the district court did not include any unrealized capital gains in father's income. Instead, the court excluded father's personal expenses and other expenses that the court found were inappropriate for determining gross income and designed to shirk his obligation to provide reasonable child support. Nothing in *Schaefer* suggests this ruling was erroneous.

### III. Mother's Appellate Attorney Fees and Costs

¶ 27 Mother requests an award of her appellate attorney fees and costs based on the district court's finding that father's financial circumstances are vastly superior to hers. Under section 14-10-119, a court may "order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to this article 10 . . . including sums for legal services rendered and costs incurred . . . after entry of judgment."

¶ 28 As previously noted, the district court has already determined that father's finances are vastly superior to mother's and awarded

her a portion of the attorney fees she incurred in the district court. Because of the district court's familiarity with the facts and equities of this case, and its superior position to make factual findings, we remand with instructions for the court to consider mother's request for appellate attorney fees under section 14-10-119.

## IV. Disposition

¶ 29 The judgment is affirmed, and the case is remanded for further proceedings consistent with this opinion.

JUDGE FREYRE and JUDGE BROWN concur.