25CA0645 Parental Resp Conc LAL 02-12-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0645
Arapahoe County District Court No. 23JV30202
Honorable Christine A. Washburn, Judge

---

In re the Parental Responsibilities Concerning L.A.L. and E.E.L., Children,

and Concerning Clifford A. Bloch and Natalie Bloch,

Appellees,

and

David Samuel Lechner,

Appellant.

---

ORDER AFFIRMED

Division IV
Opinion by JUDGE FREYRE
Brown and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 12, 2026

---

Springer & Steinberg, P.C., Amy M. Springer, Michael P. Zwiebel, Denver, Colorado, for Appellees

Robinson & Henry, P.C, Zach Williams, Westminster, Colorado, for Appellant

¶ 1 David Samuel Lechner (father) appeals the district court's order requiring him to pay retroactive child support for L.A.L. and E.E.L. (the children). We affirm the order.

## I. Background

¶ 2 Father and mother were involved in divorce proceedings when, before the permanent orders hearing, father shot and killed mother. Mother's parents (grandparents) took custody of the children immediately after the incident.

¶ 3 Grandparents later moved for a child support order, including a request for retroactive support to the time of mother's death in March 2023, pursuant to section 19-6-104, C.R.S. 2025. The court held an evidentiary hearing at which father represented himself. Father and grandfather testified, and the parties submitted written closing arguments. After the hearing, but before the court issued a written order, a jury convicted father of first degree murder, and he was sentenced to life in prison without the possibility of parole.

¶ 4 The court then issued a written order requiring father to pay retroactive child support in a lump sum payment of $560,000. The court noted this amount was a deviation from the child support guidelines but found the presumptive amount inequitable, unjust,

1

or inappropriate based on the fact that father was responsible for mother's death, that father was in prison for life and thus had very few upcoming living expenses, and that father had sufficient financial resources to pay the amount awarded.

¶ 5     Father appeals.

## II.     Standard of Review

¶ 6     We review child support orders for an abuse of discretion because the issue of a parent's financial resources is factual in nature. *In re Marriage of Davis*, 252 P.3d 530, 533 (Colo. App. 2011). Abuse of discretion occurs when the district court's child support determination is manifestly arbitrary, unreasonable, or unfair. *In re Marriage of Atencio*, 47 P.3d 718, 720 (Colo. App. 2002). When a district court's order is supported by competent evidence, it should not be disturbed on review. *In re Marriage of Udis*, 780 P.2d 499, 504 (Colo. 1989).

## III.     Relevant Law

¶ 7     For child support purposes, "income" means the actual gross income of a parent from any source. § 14-10-115(5)(a)(I), C.R.S. 2025; *Davis*, 252 P.3d at 534; *see also* § 19-6-106, C.R.S. 2025 (section 14-10-115 applies to child support actions brought

pursuant to title 19). The statute defines income broadly to include sources beyond those specifically listed. *See In re A.M.D.*, 78 P.3d 741, 743-44 (Colo. 2003). And a source of income not listed in the statute may be included in a parent's gross income for child support purposes if it is available to the parent to pay their expenses or increase their standard of living. *See id.* at 746.

¶ 8      Using the parent's income and other factors, the court calculates an amount using the guideline and schedule under section 14-10-115(7), which establishes a rebuttable presumption of the amount of child support a parent owes. § 14-10-115(8)(e); *see In re Marriage of Wells*, 252 P.3d 1212, 1214 (Colo. App. 2011). A court may deviate from the guidelines and schedule if applying them would be "inequitable, unjust, or inappropriate," but such deviation must be accompanied by findings "specifying the reasons for deviation." § 14-10-115(8)(e).

IV.      Income Determination

¶ 9      Father argues the district court erred when it determined his income for the purposes of calculating his child support obligation. He also claims that the court improperly imputed him income

3

despite his incarceration without possibility of parole. We are not persuaded.

## A. Father Did Not Preserve His Argument that the Funds Were Unavailable

¶ 10 Father first claims that the court inappropriately considered funds disbursed from his investment accounts and proceeds from the sale of the marital home as "income" because "such funds are not available [for his] discretionary use." But father did not present this argument to the district court. On appeal, he asserts that he preserved the "sum and substance" of his argument by generally asking the court to decline to award child support in his closing argument, and that this court must liberally interpret his pleadings because he was pro se. We disagree.

¶ 11 To preserve an issue for appeal, the party must bring the issue to the district court's attention, giving the court an opportunity to rule on it. *Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010). And although we liberally construe a pro se party's arguments, we cannot invent arguments father has not made. *See People v. Cali*, 2020 CO 20, ¶ 34; *Minshall v. Johnston*, 2018 COA 44, ¶ 21. Father urges us to consider his argument

4

because he was pro se at the hearing but provides no authority indicating that an appellate court may disregard the principle of preservation simply because a party acted pro se at the district court level. *See Anderson v. Shorter Arms Investors, LLC*, 2023 COA 71, ¶ 25 (noting that liberal construction of pro se pleadings does not include considering arguments that are not preserved). Moreover, "[a] pro se litigant who chooses to rely upon his own understanding of legal principles and procedures is required to follow the same procedural rules as those who are qualified to practice law and must be prepared to accept the consequences of his mistakes and errors." *Rosenberg v. Grady*, 843 P.2d 25, 26 (Colo. App. 1992).

¶ 12 In support of his argument that he preserved the issue of whether the funds were "available for discretionary use," father, who is now represented by counsel, cites an unpublished case, *In re Parental Responsibilities Concerning S.L.*, (Colo. App. No. 23CA1269, Aug. 29, 2024) (not published pursuant to C.A.R. 35(e)). Of course, unpublished opinions announced by this court "have no value as precedent." *Patterson v. James*, 2018 COA 173, ¶ 40 (quoting *Welby Gardens v. Adams Cnty. Bd. of Equalization*, 71 P.3d 992,

999 (Colo. 2003)).  And it is this court's policy that parties are generally forbidden from citing unpublished opinions.  *See Colorado Court of Appeals, Citation Policies, Policy Concerning Citation of Unpublished Opinions* (2025), https://perma.cc/M9HG-J295 (stating that citation of unpublished opinions is prohibited absent certain exceptions that do not apply here).

¶ 13    In any event, father testified at the hearing that he did not want his money to go to support his children because he needed the money to hire a criminal defense team, to pay his "other bills and loans," and to pay for "commissary, sweats, food, all the kind of stuff that you do in prison."  Accordingly, father's own testimony indicated that he believed the funds were available for his discretionary use.

B. The Court Did Not Impute Income to Father Going Forward

¶ 14    Father next argues that the court erred when it imputed income to him in contravention of section 14-10-115(5)(b)(I)(C), which provides that "a determination of potential income must not be made for an incarcerated parent sentenced to one hundred eighty days or more."  But father does not point us to, nor can we locate in the record, the district court's purported mistake.  To be

sure, the court found that the guideline amount of child support for the year 2025 was ten dollars per month. But this was not an income determination as father appears to claim. Rather, it is the guideline amount of child support for parents making under $650 per year. *See* § 14-10-115(7)(b). Moreover, the court did not order any child support going forward, so it is unclear how any purported error affected father.

¶ 15    In sum, the district court did not err when it calculated father's income for the years 2023, 2024, and 2025.

V.    The Children's 529 Accounts

¶ 16    Father also asserts that the district court erred when it ordered that he execute necessary paperwork to transfer the children's 529 accounts to grandparents to be distributed for the benefit of their post-secondary education.[1] We disagree.

¶ 17    The court heard very little about the 529 accounts. At the hearing, father referenced them only once when he asked

---

[1] Named for a section of the Internal Revenue Code, 529 plans are tax-deferred savings plans designed to help pay for college expenses. L.A.L's account totaled $76,783.02 and E.E.L.'s account totaled $53,625.81.

grandfather about the existence of the accounts, and grandfather explained that he had no knowledge of them. Father again referenced the accounts in his written closing argument when he contended that the children were well cared for without any contributions from him. As support for this assertion, father included a list of accounts belonging to the children including the 529 accounts.

¶ 18   As we understand father's argument on appeal, he claims the court's order required him to contribute to the cost of the children's post-secondary education, and the court was prohibited from doing so under section 14-10-115(15). We agree that a court has no authority to order a parent to contribute to their children's post-secondary education absent an agreement by the parties. *See* § 14-10-115(13)(V)(b); *In re Marriage of Chalat*, 112 P.3d 47, 51 (Colo. 2005); *see also* § 14-10-115(15) (providing guidelines for post-secondary education obligations established prior to July 1, 1997). Thus, if the court had concluded that it was appropriate for father to contribute to the costs of the children's postsecondary education pursuant to section 14-10-115(15)(c), its conclusion would have been error.

8

¶ 19    But the court's order requiring father to execute documents designating grandparents as the administrators of the children's already existing 529 plans did not order father to contribute to the costs of the children's post-secondary education pursuant to section 14-10-115(15)(c).  It required only that father execute the necessary documents to transfer the already existing accounts.  The court's order noted that "father did not appear to object" to transferring the 529 accounts in his closing argument.  And on appeal, father concedes that he "did not necessarily object to transferring the 529 accounts to [grandparents]."

¶ 20    Father contends, however, that he "did not agree to the transfer of the accounts in the form of a stipulation or [s]eparation [a]greement."  But the court's order simply requires father to execute necessary paperwork so that the already existing accounts can be administered by grandparents, the children's legal guardians — a process to which the district court noted that father did not object.  Nor does father explain how he is prejudiced by the court's order requiring that he execute the required paperwork.  *See* C.R.C.P. 61 ("The court at every stage of the proceeding must

disregard any error defect in the proceeding which does not affect the substantial rights of the parties.").

¶ 21 Accordingly, the court did not err when it ordered father to execute necessary paperwork to transfer the children's 529 accounts to grandparents.

### VI. Grandparents' Request for Attorney Fees

¶ 22 Grandparents ask for their appellate attorney fees, arguing that father's appeal was frivolous. C.A.R. 39.1; § 13-17-102(2), C.R.S. 2025. We deny this request.

¶ 23 Although father did not prevail in his appeal, it was not so lacking in justification as to warrant an award of fees. *See Glover v. Serratoga Falls LLC*, 2021 CO 77, ¶ 70 (noting that awards of appellate attorney fees for frivolous appeals should be reserved for "clear and unequivocal" cases involving "egregious conduct" (citation omitted)).

### VII. Disposition

¶ 24 The order is affirmed.

JUDGE BROWN and JUDGE SCHUTZ concur.